Susan Snoddy *v.* C. D. Brashear and Wife.

An action of lesion, as between the parties to the contract of sale, is not peremptorily destroyed by an
anterior sale, which has never come in conflict with the title acquired by the vendee.

The legal effect of a judgment of separation of property, obtained by the wife, is to dissolve the com-
munity, *ipso facto*, from the time of filing the petition for separation.

The wife thus separated in property from her husband, when she does not renounce, is not presumed to
accept the community of acquets and gains, existing up to the date of bringing her suit ; she has a
contingent and eventual right only, to be exercised at the expiration of the time fixed for the com-
munity, if she chooses to accept.

APPEAL from the District Court of the Parish of Avoyelles, *Ogden, J.*
*T. C. Manning* and *A. B. Irion*, for plaintiff.  *H. & S. L. Taylor, W. B.
Lewis* and *Barlow & Waddill*, for defendants and appellants.

Spofford, J.  This cause is before the court for a second time.  The case will
be found reported in 3d An. 569.

Our predecessors there decided that, under the Louisiana Code, the action of
rescission for lesion beyond moiety must be brought against the original vendee
and his heirs, and does not lie against third persons purchasing in good faith from
the vendee.  This opinion was not only expressed by Mr. Justice Rost, as the
organ of the court upon the first hearing, but was unanimously adhered to by his
colleagues upon the re-hearing, at a subsequent term.  The cause was remanded
for a new trial only to obtain further evidence as to the question, whether *Mrs.
Brashear* should be considered as a third person who had purchased in good
faith.

The defendants have taken this appeal from a judgment against them upon the
second trial in the District Court.  The sale was rescinded for lesion, *outre moitié*,
as against both *Charles D. Brashear* and his wife, and the defendants ordered to
restore the land to plaintiff in default of the payment of $4700, as the supplement
of the just price, which the District Judge fixed at $5000.

·A new point is made by the defendants, to wit : that the orignal plaintiff before
she sold to *Brashear*, and before she became the confirmee of the Evan Baker
claim, had sold her rights in said claim to one *Spaulding*.  Without deciding
whether such a conveyance, as is exhibited, of an uncertain and inchoate right to
public land, would estop the party selling from bringing a petitory action after
being confirmed in a personal title, as against a third possessor, we think that the
action of rescission for lesion, as between the parties to the contract in which
the lesion is said to exist, is not peremptorily destroyed by such an anterior
sale as this, which has never come in conflict with the title acquired by defen-
dant.

The first question to be decided is, whether *Mrs. Brashear* is to be considered
as a third possessor in good faith.  That she is, is formally and explicitly asserted,
in her answer filed before the second trial.  The plaintiff contends that she is not,
because *C. D. Brashear* bought the land pending the community between him and
his wife.  But, shortly after the purchase, *Mrs. Brashear* sued him for the restitu-
tion of her proper effects, or their value, and a separation of property.  This she
obtained, recovering a judgment against him also for the sum of $5996 with legal
mortgage on all his property, dating back to 1834 and 1840.  She neither asked

nor obtained any decree against him as to the community. Indeed, she made no allusions to it in her petition. The legal effect of the judgment of separation of property was *ipso facto* to dissolve the community, from the time of the filing of her petition for separation. C. C. 2406 ; *Hotard* v. *Hotard,* 12 An. 145 ; *Dugas* v. *Husband,* 6 Rob. 527. But did she accept the community, which is supposed to have existed up to that date ? That is a very important question as to her, for, by accepting the community, she becomes responsible for one-half its debts. C. C. 2404. Her moneyed judgment with its accompanying mortgage was for a sum which it appears all the property in the possession of her husband was insufficient to meet. A portion of it is still unpaid. It is not pretended that she has done any act going to show an implied acceptance of the community. She has not accepted it expressly. Her silence in her petition for a separation is not unmeaning.

Article 2389 of the Louisiana Code declares that " the wife *separated from bed and board,* who has not, within the delays above fixed, to begin from the separation finally pronounced, accepted the community, *is supposed to have renounced the same ;* unless, being still within the term, she has obtained a prorogation from the Judge, after the husband was heard or after he was duly summoned.'' It is true, this Article speaks of the wife separated *de corps* only ; but when we refer to Article 2404 we find not that the wife separate in property is presumed to accept unless she renounces, as is a surviving wife in case of the death of her husband. C. C. 2382 ; *Audrich* v. *Lamothe,* 12th An. 76 ; *Williamson* v. *Amilton,* ante 387. But that she *may,* notwithstanding the separation judicially pronounced, accept the partnership or community of gains which may have existed up to that time. There is an evident implication that she is not presumed to accept from mere silence, but rather the contrary. " *She may, nevertheless, accept.*"

Now, in all these years, the defendant, *Mrs. Brashear,* having shown no symptom of a disposition to accept the community which, theoretically, existed between her and her husband from marriage, until her petition for a separation of property, she cannot be considered as now having, or ever having had, any interest therein. During the time they are supposed to have lived under the community *régime* she had no right of control over the property acquired ; her husband was head and master ; he acquired and alienated alone ; in no one piece of property acquired did she have any special or proprietory interest ; the utmost that she had was a contingent and eventual right in one-half of such of the acquets and gains as might happen to be found in their common possession at the expiration of the term fixed for the community ; it was contingent upon her acceptance, unless she should choose to accept, it would be, as to her, as if no community had ever been supposed to exist. She would be a stranger to the acquisitions. Everything done with relation thereto must be viewed as done by the husband alone. *Johnson* v. *Pilster,* 4 Rob. 71 ; *Brossac* v. *Ducros,* Ibid, 335.

And so we think she must be considered as a stranger to the purchase by *Brashear* from the plaintiff. She claims this land not through or under any community right, but as a third person buying at public sale a piece of her husband's property in which she had no proprietory interest. The fact, that her legal mortgage may have rested on it does not divest her of her quality of " third person."

She appears to have proceeded in the execution of her judgment of separation with sufficient promptitude to keep it alive.

We conclude, therefore, that being a third person in good faith, in the sense of

the law, *Mrs. Brashear*, under the decision already made, is not liable to the action of lesion at the pursuit of the plaintiff.

The liability of *C. D. Brashear* is, to make up the supplement of the price; and, as was said by our predecessors in remanding the cause "he must be held *personally* responsible, if there was lesion, even if his wife's purchase should be maintained." 3 An. 573.

But we cannot concur with the District Judge in his estimate of the just value of the thing at the date of the sale from *Mrs. Snoddy* to *Brashear*. At the former trial, in 1845, this value was fixed at $1500. In 1857 the just price of the same land, at the same date, and under the same circumstances, is fixed at $5000. This is a striking illustration of the danger of introducing lax rules with regard to the action of lesion for a deficiency in the price. Land in a wilderness, though richer than the valley of the Nile, is worthless; while sand may be turned into gold in the neighborhood of cities. In a section of country like this, undergoing a rapid development, the fluctuations in value of real estate afford a marked contrast to the certainty and stability of prices in a country like France. In appraising the probable value of lands at a past period, it is almost impossible to guard the mind from the influence of those accidental circumstances which have given it its present value. One readily supposes that he would have had the sagacity to forsee those circumstances.

But, to arrive at a proper appreciation of the value of property at a given period in the past, a witness should place himself at the point of time indicated, and take into account all the chances against, as well as for, a future enhancement in value.

It is, probable, from the evidence, that there was scarcely any market value for lands in the vicinity of the tract in question, at the date of the sale. Every thing was uncertain and speculative. One witness thinks this land was hardly worth the taxes then assessed. Another thinks it was worth from $12,000 to $15,000. Between such wild extremes as these, sworn to by witnesses fourteen years after the sale, it is difficult to make a sober valuation. Considering all the statements of witnesses, the clouds which overhung the title, and the impossibility of predicting results that are now historical, we think the estimate made by the District Judge on the former trial should not be enlarged.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided asd reversed; and it is now ordered, adjudged and decreed, that there be judgment in favor of the defendant, *Mrs. Eliza C. Brashear*, with costs; and, it is further ordered and decreed, that the plaintiff have judgment against the defendant, *Charles D. Brashear*, for the sum of twelve hundred dollars, with five per cent. interest thereon from the 29th October, 1845, until paid, and the costs of suit in the District Court; the costs of this appeal to be borne by the plaintiff and appellees.