to be appealed from suspensively is well taken and must be sustained.

And we are further of the opinion that its ·complaint against the amount of the release bond as fixed by the respondent judge is well taken. This amount is $90,000.00. It is more than four times the estimate of value fixed upon the property by the sheriff's inventory forming part of his return on the writ of sequestration.

The evidence in the record as to the value ·of the property shows the sheriff's valuation far too small, but yet does not, we think, entirely justify the very large bond required by the judge, especially in view of the thirty thousand dollar injunction bond plaintiff company was compelled to give.

The amount of the bond as fixed by our learned brother of the District Court is held to be excessive—not the exercise of that wise discretion required by the law—and, we think, under its supervisory powers, now that the case is here on complaint as to that and other rulings, it is both competent and proper for this Court, considering the evidence of value of the property brought up as part of the record, to direct the respondent judge to reduce the amount of the release bond and to fix it at a figure deemed more reasonable, to-wit:—$50,000.00.

For the reasons assigned it is ordered that the writs applied for be sustained and perpetuated to the extent of disallowing and prohibiting the suspensive appeal granted by the respondent judge to the Morgan City Timber Company, Limited, from the order or judgment authorizing the Des Allemands Lumber Company, Limited, to dissolve the judicial sequestration on bond; and to the further extent of directing the respondent judge to reduce the release bond the said Des Allemands Lumber Company, Limited, is required to give, in order to secure the dissolution of the sequestration, from ninety thousand dollars to fifty thousand dollars.

It is further ordered that in all other respects and for all the other purposes for which applied, the said writs are denied and the rule *nisi* discharged.

See dissenting opinion of MONROE, J., 34 South. 807.

PROVOSTY, J., joins in this dissent.

(34 South. 807.)

No. 14,506.

MARTIN DAVIE & CO., Limited, v. CAR- VILLE.

(March 16; 1903.)

SURVIVING WIFE—ACCEPTANCE OF COMMUNITY—LIABILITY TO INDIVIDUAL CREDITORS— PLEADING AND PROOF.

1. While a surviving wife, by failing to have the succession of her husband opened, by failing to avail herself of the benefit of inventory, by taking possession of the property of the succession, by recognizing and paying debts, and by continuing the business of a store which her husband had kept, has unquestionably committed herself to an unconditional acceptance of the community, she does not, however, by so doing, render herself liable to each individual creditor of the community for the payment in entirety of his debt. Each creditor can recover from her under her status "as widow in community" only one-half of this debt. Had it been alleged and shown that she was in actual possession of specific property on which the creditor had a privilege or mortgage, she might have been proceeded against under proper pleadings to surrender the property, or made to pay the debt in its entirety.

2. If the surviving widow has taken possession of community property in value beyond her share, she owes the value of the husband's share to his succession or to his heirs, and not personally, through a direct action against her, to any particular creditor. Ludeling v. Felton, 29 La. Ann. 722, 723.

3. Plaintiff, under an allegation that defendant had "offered to pay his debt, but without interest," cannot, over objections, introduce evidence to prove an unconditional promise to pay the entire debt, with interest, particularly when he himself testified that she had "offered to pay the account in full if he would take off the interest, but that she would not pay the interest." An acceptance of an offer must conform to its conditions. Civ. Code, art. 1805.

Blanchard, J., dissenting.

(Syllabus by the Court.)

Action by Martin Davie & Co., Limited, against J. M. Carville. Judgment for plaintiff was affirmed by the court of appeals, and defendant applies for certiorari or writ of review. Reversed.

Edward N. Pugh and Walter Lemann, for applicant. Hébert & Hébert, for respondent.

Statement of the Case.

NICHOLLS, C. J. The plaintiff instituted a suit in the district court for the parish of

Iberville, praying to recover judgment against the defendant upon the following allegations:

That Mrs. J. M. Carville, a resident of the parish of Iberville, is justly and legally indebted unto your petitioners in the sum of three hundred and fifty dollars and seventy-five cents ($350.75), with 5 per cent. per annum interest thereon from September 5, 1899, until final payment, for the following reasons, to wit:

That petitioner, doing a wholesale grocery and commission business, sold and delivered unto J. M. Carville groceries, goods, cash, etc., from September 15, 1898, to February 9, 1899; that said goods, etc., were well worth the prices charged, which were their market prices at the time of their sale and delivery, all of which will more fully appear by reference to a detailed and itemized account thereof hereto annexed and hereof made a part (see suit No. 9, Twenty-First Judicial District Court, Iberville parish).

Now petitioner alleges that the said J. M. Carville died on the 21st day of February, 1899, and that his widow, Mrs. J. M. Carville, accepted his succession unconditionally; that the said J. M. Carville and his wife, Mrs. J. M. Carville, were married under the régime of the community; that, after the death of J. M. Carville, Mrs. J. M. Carville failed to have his succession opened, or to cause an inventory to be made, or to avail herself of the benefit of inventory; but she took the property of the succession, paid the debts of the estate, and continued the store business, and kept the very goods herein sued for, and paid herself the credits given on the account.

Petitioner shows that the account was originally for $643.50; that on said amount 5 per cent. interest per annum was due from December 31, 1898, until May 30, 1899, when Mrs. Carville paid $18.49, and from May 30, 1899, the same rate of interest was due on the balance until September 5, 1899, when Mrs. Carville paid $300, making a total of credits of $318.49 paid by Mrs. Carville herself, and leaving a balance of $350.75 due and unpaid, with 5 per cent. per annum interest from Sept. 5, 1899, until final payment; that she repeatedly acknowledged the correctness of said account, and offered to pay the same without interest; that by her acts and doings she has bound herself individually for the amount herein sued for.

Avers amicable demand in vain.

Wherefore, the premises considered, petitioner prays for service of a copy of this petition on Mrs. J. M. Carville, and for citation on her to appear and answer according to law; that, after the legal delays and due proceedings had, there be judgment in favor of petitioner and against the said Mrs. J. M. Carville in the sum of $350.75, with 5 per cent. per annum interest thereon from Sept. 5, 1899, until final payment; and further prays for costs, and for general, special, and equitable relief in the premises.

Defendant pleaded, first, an exception of no cause of action, and, later, an exception to the jurisdiction of the court.

Under reservation of the exceptions she answered, pleading the general issue, specially denying that she was the unconditional heir of her husband, as he had died leaving descendants. Averring that the plaintiff's suit was neither just nor well founded, she prayed that it might be dismissed.

The district court rendered the following judgment:

"Defendant is sued for $350.75, a balance upon an account that originally amounted to $701, contracted by her husband just prior to his death in February, 1899, for goods and merchandise, and on which the defendant paid $350, and which it is alleged she bound herself individually for the amount in controversy.

"The contention under the pleadings is that the defendant is sued as an heir of her husband, and that the petition does not contain any specific allegation that the defendant accepted the community existing between her and her husband, rendering her liable for one-half of its debts, and also that there is no specific allegation of an assumption by the defendant of the indebtedness to plaintiff, making her personally liable in this suit."

The court here set out plaintiff's pleadings, and, after doing so, continued as follows:

"The petition no doubt lacks clearness and precision in setting forth the legal and personal liability of the defendant, but not in such a manner as to preclude plaintiff from recovering. The fact, as alleged, being that the defendant was married under the régime of the community, the law presumes that all

acquisitions of property during the marital relations of the parties is community. The allegation that she had accepted the succession of her husband, unconditionally, must be understood and applied, therefore, in reference to the community, particularly as there is no pretense that the husband had separate property, and the nature of his business as a merchant indicating that his property was community.

"As to the second, it is true that the allegations as to the defendant's personal liability is general. It may be said that, as in the case of Fenn v. Holmes, 6 La. Ann. 200, which was one against a married woman upon a general allegation of personal liability upon a note, the plaintiff has made a general allegation that defendant is personally bound for the note. If he fails in this suit he cannot renew it in another form, because the general ground of action he has taken includes all others he may have, and the judgment in this case would be res judicata against him in any other. This being the only suit which the plaintiff can maintain upon the note (account here), he ought to be permitted to introduce all the evidence in support of his claim, unless the generality and vagueness of his allegations concealed from the defendant the real purport of the suit, and the evidence offered under these allegations took him by surprise.

"The rule of certainty in pleadings is answered and subserved where the allegations of the petition indicate the nature or cause of action sufficiently to apprise the opposite party as to the issues, so as to avoid surprise and to serve as a basis of res judicata.

"Here the defendant is charged with accepting unconditionally her husband's estate, which could have only consisted of community property, and, by her acts and doings, with having bound herself personally for the debt of plaintiff, which she had acknowledged and partly paid.

"There could have been no doubt, from all the allegations of the petition, as to the issues under these circumstances.

"For these reasons, judgment shall be written up accordingly."

Defendant appealed. The Court of Appeal rendered the following judgment:

"The only question presented to us in

this case is whether the allegations of plaintiff's petition sufficiently disclose a cause of action to entitle a recovery on the claim sued on. The defendant has interposed an exception of no cause of action, and contends that, if it is held that she has accepted the succession of her husband as surviving widow in community, the account sued on being a community debt, she cannot be held for more than one-half of the original debt, which she has nearly paid, and that the balance due by her, if any, is below the jurisdiction of the district court. She has filed her plea of want of jurisdiction to that effect. Her defense on the merits is a general denial, and, the judgment of the lower court being against her, she has appealed.

"For the purpose of a decision on the exception, we take the allegations of the petition as true, and they show conclusively that by her acts and doings the defendant has rendered herself individually liable for this debt.

"She failed to have the succession of her husband opened or any inventory made. She possessed herself extrajudicially of all the property belonging to the community, paid the debts, took the goods which had been sold to her husband prior to his death, used them to continue in her name and for her benefit the business carried on by her husband, assumed the indebtedness contracted for as the purchase price of those goods, paid a portion of the debt after the death of her husband, assumed the debt, acknowledged the correctness of the account, which she promised to pay without interest. Those are the acts and doings which made her responsible, not as widow in community, but personally and individually, for the account sued on. She is estopped from denying the liability which she contracted herein towards the plaintiff in this case after the death of her husband.

"As well said by their learned counsel, it would be a very violent and dangerous rule which would permit her to gobble up the whole of the property belonging to the community and fix her liability for its debts at one-half only.

"We conclude, with our learned Brother of the district court, that the allegations of the petition sufficiently disclose a cause of action against the defendant, and that she is personally liable for this debt. On the

merits the claim was fully proven, and the judgment of the lower court is correct."

"For these reasons it is ordered, adjudged, and decreed that the judgment of the district court herein rendered be, and the same is hereby, affirmed."

This court, upon application of the defendant, ordered the case up for review under article 101 of the Constitution.

## Opinion.

Although an exception of no cause of action was filed in the district court by the defendant, the case was tried on the merits, evidence was adduced, and judgment was rendered in favor of the plaintiffs. It was shown on the trial that J. M. Carville, the husband of the defendant, left descendants; his wife, therefore, was not his heir. The court felt justified, in dealing with plaintiffs' pleadings, to assume that the averment of "unconditional heirship" was intended as an allegation of an unconditional acceptance by the wife of the community which had existed between herself and her husband. The liability of the wife to the plaintiffs is grounded upon the following allegations:

"After the death of J. M. Carville, Mrs. J. M. Carville failed to have his succession opened, or to avail herself of the benefit of inventory, but she took the property of the succession, paid the debts of the estate, and continued the store business, and kept the very goods herein sued for, and paid, herself, the credits given on the account. * * * She repeatedly acknowledged the correctness of said account, and offered to pay the same without interest, and by her acts and doings she had bound herself individually for the amount sued for."

We find no direct evidence in the record showing that the goods covered by the account were in the possession of Carville at the time of his death, or that defendant either kept or sold the same. It is quite likely, however, as a fact, that a small part of the same were in Carville's possession at his death. What became of them we would know only inferentially. It is shown that no inventory of the property of the estate was made, and that no steps were taken by the widow to open her husband's succession; also that she continued the business of the store after her husband's death, taking out the license of 1899 in her own name. Her husband died on the 21st of February, 1899. The license for 1898 was taken out and paid for by him. There is no allegation made in the petition as to what action the widow took in reference to a right of usufruct.

Defendant's contentions are that there is neither allegation nor proof that she assumed to pay personally the whole debt; that at best she acknowledged the correctness of the debt, and offered to pay, "but without interest," and this offer was not accepted. She denies that an acceptance by her of the community carried with it, as a result, a liability on her to pay the debts of the community in their entirety; that at most she would be liable for one-half of the debts.

She testified, herself, to having paid one or more mortgage notes of the succession. One of the plaintiffs' firm testified that he had had several interviews with Mrs. Carville; "she offered to pay him the full of the account if he would take off the interest, but that she would not pay the interest; she admitted that the account was correct."

On the trial plaintiffs filed two letters written by the defendant. Plaintiffs' attorneys had evidently applied to her for payment of the account sued on, and the first letter of August 1, 1899, was in reply to this demand. This letter must have been sent to Martin Davie & Co., and their answer, being sent to defendant, resulted in the sending of the letter of the 22d of August:

"Hebert & Hebert, Plaquemine, La.

"Messrs.—I cannot at present do anything for Martin Davie & Co., in fact not until my rice is threshed. I am deeply indebted to the Bank of Plaquemine for property and it in a way belongs to them. But my crop is good and I think I will make enough to settle all accounts and ask only a little time and patience. The Bank of Plaquemine through its Directors promised me when I started my crop to give me time and by their kindness and also that of other creditors I hope to be able to square up all accounts.

"Yours very respy

"Mrs. J. M. Carville."

Below this letter is written the following:

"Martin Davie & Co., Ltd.

"Gents—The above in reference to your claim explains itself what do you say about it?"

The second letter was as follows:

"Dreyfous P. O. La. Aug. 22 1899.

"Hebert & Hebert, Plaquemine, La.

"Messrs.—Your letter and also that of Martin, Davie to hand and contents noted I understand by Martin Davies letter that they will give me 60 days to settle. Accept their offer and promise to pay in that time.

"Yours very respectfully

"Mrs. J. M. Carville."

Defendant, on the trial, objected to any evidence tending to establish a cause of action other than that set out in the petition, particularly to any evidence which would base the demand upon any assumption of the debt beyond her share of the same, insisting that so much of the petition as declared that defendant by her acts and doings had bound herself individually for the amount sued on was a mere conclusion of law based on the antecedent facts, and set up no substantive ground of action.

Defendant denies, as a proposition of law, that by not taking an inventory, by continuing in possession of the store and the business therein, by paying or recognizing community debts or offering to pay the same, she became an intermeddler, or that her liability was extended beyond her share of one-half of each debt of the community. She insists that whatever payments she made must be imputed upon her share of the community indebtedness. Saloy v. Chexnaidre, 14 La. Ann. 568.

She refers to article 1100 of the Civil Code, asserting that that refers to the taking possession of the assets of a vacant succession, not to a case where the surviving wife keeps possession, in which she has an interest to the extent of one half and her minor children of the other half.

She refers the court on that subject to Collins v. Babin, 16 La. Ann. 291, and to that portion of the opinion in which the court said: "The plaintiff is not charged with having fraudulently suppressed or disposed of any part of the community property, but with having accepted the community, and the evidence fully justifies a tacit acceptance by reason of her active concern in the effects of the community. The consequence of her acts is to render her responsible for one-half of the debts. Lynch v. Benton, 12 Rob. 113; Cox v. Hunter's Heirs, 10 La. 427; Civ. Code,

art. 2378." She also, in this connection, cites Ludeling v. Felton, 29 La. Ann. 719, and Succession of Trosclair, 34 La. Ann. 330.

Defendant also cites the following extracts from Lynch v. Benton, 12 Rob. 117, 118: "It is a legal right which she [the wife] has, to accept the succession in any manner under the conditions imposed by law. From whatever cause she [the wife] forfeits the right of renouncing the community, she can be made responsible only for one-half of the debts contracted during the marriage. Civ. Code, art. 2378; Flood v. Shamburgh, 3 Mart. (N. S.) 631 * * * Where her [the wife's] liability results from the taking and converting of the money of her husband's estate, as in the present case, the act itself implies fraud. Res ipsa loquitur. She should, however, have been decreed to pay only one-half of the plaintiff's demand. She is in the same situation as if she had made no renunciation."

Counsel of defendant in their brief quote from Pothier, Traité de Communauté, §. 541, p. 556, as follows: "Par la même raison lorsque la veuve d'un marchand en détail ou d'un artisan a continué après la mort de son mari et avant qu'elle ait pris qualité n'est pas censée faire acte de commune en vendant et débitant ces marchandises qui sont des effets de la communauté parce qu'il paraît qu'elle fait cela pour ne pas écarter les pratiques et pour la conservation du fonds de commerce qui dépend de la communauté." And section 548, p. 360: "Par l'acceptation de la communauté la femme ou ses heritiers deviennent débiteurs pour la part qu'ils ont dans la communauté de toutes les dettes de la communauté; la femme est censée les avoir contractée en sa qualité de commune conjointement avec son mari lorsque son mari qui était le chef de la communité les a contractées comme nous l'avons vu ci-devant."

Counsel also maintain that if the court should find, as a fact, that defendant offered to pay the claim sued upon, it was upon the condition that no interest should be charged, and, the condition attached to the offer having been rejected, the offer fell. Article 1805, Civ. Code.

The widow, by accepting the community, unquestionably becomes liable personally for the payment of its debts, but only to the extent of one-half. The extent of her legal

liability to any one creditor, resulting solely from her acceptance, whether that acceptance arise from her having taken an active concern in the community after the death of her husband, or otherwise, is limited to one-half of each debt, though she might, if proceeded against, under proper conditions and pleadings, as the possessor of specific property upon which there was at the time a mortgage or privilege, be forced, in order to retain possession, to pay the whole of a special debt, leaving her to her recourse back for contribution. Laurent, in section 75, vol. 23, of his works (Contrat de Marriage), says "La loi ne dit pas comment dans quel ordre la femme paye les créanciers. Il faut donc appliquer le droit commun; la femme paye les créanciers de la communauté comme elle paye ses créanciers, c'est a dire au fur et a mesure qu'ils se presentent." In section 78 he asks the question: "La femme qui ne fait pas inventaire est-elle tenue des dettes pour le tout ou seulement pour moitié?" He answers immediately: "Voila encore une étrange question qui ne méritait certes pas d'être portée devant la cour de cassation. Est-ce qu'un débiteur peut jamais être tenu au delà de ce qu'il doit? peut il-être obligé de payer toute la dette alors qu'il n'est débiteur que pour moitié. Or la femme quand il s'agit d'une dette qu'elle n'a point personnellement contractée n'est débiteur que pour moitié. * * * Quelle sera donc la situation? ce sera celle d'un débiteur ordinaire c'est a dire qu'elle sera tenue indefiniment de ce qu'elle doit, or elle ne doit que la moitié. Comment se pourrait-il qu'elle fut tenue pour le tout alors que la loi ne la declare débitrice que pour la moitié." In section 81 the same author says: "Quand la femme est poursuivie comme associe elle ne doit payer que la moitié de la dette. Si elle paye au de la moitié elle paye ce qu'elle ne doit pas: elle devrait donc avoir l'action en répétition de l'indu en prouvant qu'elle a payé par erreur ce qu'elle ne devait pas c'est a dire plus que la moitié dont elle etait tenue. La loi lui accorde cette répétition mais sous une condition spéciale c'est que l'erreur se trouve constatée dans la quittance."

We were at one time under the impression that defendant might be held for the whole debt, under the allegation of the petition that she had continued the store business and kept the very goods herein sued on, but we do not think that position tenable, first, because it has not been alleged as a fact that the goods covered by the account were in possession of Carville at his death, and had been taken possession of by the widow, and, if so, the pleadings in the case were not such as the situation would call for; and, second, because this court in Ludeling v. Felton, 29 La. Ann. 722, 723, had occasion to discuss from that standpoint the liability of a widow who had taken possession of community property beyond her interest therein, or had disposed of the same. This court in that case said: "If it is shown that plaintiff's debt is one of the community, and if defendant has accepted, expressly or tacitly, she is certainly bound to pay one-half of it. There is no pretense that she ever expressly accepted the succession, but it is urged that she did so tacitly by taking possession of its effects and disposing of them for her own benefit. We have read the testimony with care, and must say * * * that the proof satisfies us that there were at least four or five mules, and perhaps other effects, belonging to the community, and that the defendant sold and disposed of them for her own benefit. This act was a tacit acceptance, and, notwithstanding any 'supposed' renunciation resulting from her silence after judgment of separation, makes her liable as a partner. Audrich v. Lamothe, 12 La. Ann. 77; Kellar v. O'Neal, 13 La. Ann. 470; Civ. Code, art. 2418. But her liability as a partner is only for one-half of the debt. True, she would be responsible to the administrator or heirs of her husband for the amount of the value of his half of the community effects so disposed of by her. But there is in the case no proof in the record which enables us to determine that value. We do not agree to the proposition that we can take judicial cognizance of such values. Besides, if the crop of 1870 be held to have been community, it is shown that it was absorbed by the expenses of making it, and perhaps other privileged claims against the community which may have been paid by the widow. Besides, we are not prepared to say that a mere creditor of the husband can recover in such a demand because she only owes the amount of the value of the husband's share of the community effects; she owes that to the

estate of her husband, and not to any particular creditor thereof."

If every individual creditor of the community had the right to bring a direct action against the widow to recover from her the whole of his debt because she had disposed in entirety of certain specific property of the community, or could recover from her in such action the value of the half of the specific property so sold, in addition to obtaining judgment against her personally for one-half of his debt, it is obvious she might be ruined. No particular creditor would be entitled to recover and absorb the entire value of the half of the specific property so sold. He would at best be only entitled to a pro rata therein. The only parties to this suit are a single creditor as the plaintiff, and the widow alone as the defendant, she being sued exclusively as widow in community.

In France, the widow who accepts the community becomes liable for one-half of the debts, but, if she makes a legal inventory within a time designated, she is accorded what is designated there as the "bénéfice d'emolument de la femme." The benefit so granted is (with some differences) similar to the benefit of inventory accorded to the heir in a succession; that is to say, while the wife becomes liable for one-half of the debts, her liability, through this benefit, is "limited" to her "emolument" as disclosed by the inventory.

This benefit was not adopted in Louisiana. The wife had either to accept or to renounce. If she renounced, her connection with the community disappeared. If she accepted, she became liable beyond her share in the community effects, but still within the limit of one-half of each debt. By act No. 4, p. 5, of 1882, the wife was authorized to accept the community under "benefit of inventory." Her liability through that act became, under certain circumstances, limited, but it was not, by not accepting in that manner, or accepting unconditionally, extended beyond what it was before the passage of that act. She was still liable for only half of the debts. We do not think that defendant's liability to the plaintiffs was extended beyond one-half of the debts sued on as the result simply of her acceptance of the status of a widow in community. Some special fact over and beyond the fact of her "status" as widow in community would be necessary to be alleged and shown to justify a judgment against her for more than one-half.

Plaintiffs contend that they have alleged and shown such special fact when they alleged that she had acknowledged in its entirety, and had also bound herself personally to pay in its entirety, the account sued on. The mere acknowledgment of the correctness of the account did not carry with it a legal liability by her to pay in entirety the account so acknowledged. We do not understand defendant to contest the account as to its correctness, but to deny that she ever bound herself to pay the claim in its entirety. She complains that plaintiffs should have been permitted to go behind their allegations that she was the unconditional heir of her husband, and, as such, "had offered" (not promised) to pay, but "without interest." She maintains that, as the claim is demanded "with interest," the offer on the face of the papers must be held to have been rejected, and that it therefore cannot be declared upon as the basis for a judgment. An examination of the testimony shows that at the date of the last letter written by the defendant (August 22, 1899) she had paid only $18 upon the claim, and that after that date (September 5, 1899) $300 was paid, making, as plaintiffs allege, a total of $318 paid by herself. The entire debt was $643.50, with legal interest thereon from December 31, 1898. On the basis of a liability to plaintiffs for one-half of the debt, she would be still owing them the sum of $14.06, bearing legal interest from September 5, 1899, until paid. If any amount be due to the plaintiffs, we think the suit was properly brought in the district court. It is the amount demanded, not the amount for which judgment may be rendered, which determines the jurisdiction.

That the claim as to amount was not fictitious is evidenced by the fact that plaintiffs obtained in two courts the judgment which they have brought up for review.

Defendant insists that her exception of "no cause of action" was well taken, and should have been sustained; that plaintiffs should not have been allowed to change their cause of action from one directed against her

as a widow who had become the heir of her husband, and by her conduct had become bound to plaintiffs for the whole of their debt, to one directed against her as a widow in community, and that they should not have been allowed under an allegation that she had "offered to pay, but without interest," plaintiffs' claim, which offer was shown by the demand itself not to have been accepted, to recover upon an absolute promise to pay, not only not alleged, but contrary to the allegations of the petition.

The position of the plaintiffs in that matter is that the pleadings claimed that the defendant, as the widow of J. M. Carville, had become his heir, and that as such she had accepted unconditionally his succession, and become (independently of any promise) liable to the plaintiffs to the full amount of their claim. That though they had averred a recognition by her of the claim, and an offer by her to pay it (though without interest), those allegations, at worst, were unnecessary and surplusage. That, inasmuch as the wife could legally become the heir of the husband under certain circumstances, and could by certain acts of hers become bound to the plaintiffs (independently of any conventional promise to pay) for the full amount of their debt, the court could not, under the pleadings, sustain the exception. That if, in point of fact, the situation was not such as to have authorized those allegations to have been made, this was a matter only to be ascertained on the trial, and knowledge so ascertained could not be made to have any effect back upon the exception, and could only be considered on the merits.

It may be conceded, for the purposes of this case, that under plaintiffs' allegations defendant was sought to be made liable in the double capacity of an unconditional heir of her husband, and as a widow who had accepted unconditionally the community between her deceased husband and herself, and that they could recover from her whatever they would be legally entitled to as warranted by the evidence and the pleadings.

If the allegations, as made, as to unconditional heirship, had been sustained by testimony, she would unquestionably have rendered herself liable for plaintiffs' debt in its entirety. It would have been a matter of no importance, under such circumstances, whether she "promised to pay" the debt or not, for her liability for the entire debt would have been the legal result of an unconditional acceptance of the husband's succession, independently of any conventional personal assumption of the same. No such consequences, however, flowed from the wife's unconditional acceptance of the community. To render her liable for the entire debt, an express written contractual obligation on his part should have been alleged and shown. Plaintiffs should not have been permitted to prove an absolute promise to pay by defendant, on the face of the allegations (corroborated by Davie's testimony) that she had "offered to pay," but without interest, when the demand made against her is to pay the debt, with interest. Her recognitive act under such circumstances, in so far as it contained anything beyond her legal obligation, was of no effect. Civ. Code, art. 2271. We are of the opinion that the amount of the indebtedness of the defendant to plaintiffs on the 5th of September, 1899, was $14.06, for which amount plaintiffs were entitled to judgment, with interest.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgments rendered herein by the district court and the Court of Appeal be, and the same are hereby, annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiffs, Martin Davie & Co., Limited, do have judgment against and recover from the defendant, Mrs. J. M. Carville, as widow in community with her deceased husband, J. M. Carville, the sum of $14.06, with legal interest thereon from the 5th of September, 1899, until paid; plaintiffs to pay the costs in this court and the Court of Appeal. The right of plaintiffs to recover the balance due them upon their account, either by placing the succession of J. M. Carville under administration, or in any other legal manner, is expressly reserved to them.

BLANCHARD, J., dissents.

On Application for a Rehearing.

(June 22, 1903.)

PER CURIAM. We see no reason for changing the decree heretofore rendered in this case. It left open to the plaintiffs as

widely as possible all remedies which could be hereafter resorted to, having in view specially the giving them an opportunity of proving in another action the correctness of their allegation that the articles sold to defendant's husband for the price of which they were suing herein, and on which they claimed a vendor's privilege, were still in existence at the husband's death, and were taken possession of and sold by his widow, the defendant. The rehearing applied for is refused.

BLANCHARD, J., dissents.