(60 South. 248.)

No. 19,666.

HAIGHT v. JOHNSON et al.

(Dec. 16, 1912.)

*(Syllabus by the Court.)*

LIMITATION OF ACTIONS (§ 155*)—PRESCRIPTION—EFFECT OF PARTIAL PAYMENTS—AUTHORITY TO MAKE PAYMENT—WIDOW IN COMMUNITY.

Where it does not appear that the master of the community disposed of his estate by last will, it will be assumed that the widow in community, joint owner, with her major and minor children, of the community property, became, immediately upon the death of her husband, the usufructuary of the interest inherited by the children; and, in the double capacity of owner in indivision and usufructuary, she was authorized to pay a debt of the community, which was secured by mortgage upon the entire property, or obtain extensions of the term of payment, by paying the interest, from time to time, and such payments operated as interruptions of prescription, as to the whole debt, and this though she had never been judicially recognized as tutrix, administratrix, or usufructuary, and had not been authorized by her children. The doctrine of Long v. Dickerson, 127 La. 341, 53 South. 598, to the extent to which it is applicable to the facts, is to be applied in such case, and not the codal provision of Rev. Civ. Code, art. 3552.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 623–630; Dec. Dig. § 155.*]

Breaux, C. J., dissenting.

Case Certified from the Court of Appeal, Parish of Orleans.

Action by Charles H. Haight against Mathilda M. Johnson and others. Heard on questions certified by the Court of Appeal, Parish of Orleans. Questions answered.

Joseph F. Walton, of New Orleans, for appellant. John E. Fleury, of New Orleans, for appellees.

MONROE, J. The Court of Appeal, parish of Orleans, certifies the following questions of law to this court, asking for instructions, under article 101 of the Constitution, to wit:

"Statement.

"In 1897 Pleasant Johnson executed a mortgage note for $250, and in 1898 he died, leaving a widow and eight children, among whom were four minors. Joseph, one of the minors, died on May 19, 1910, without issue. The succession of Pleasant Johnson was opened in July, 1911, by the public administrator, and judgment was had recognizing as heirs and putting in possession as widow and heirs, respectively, the present defendants.

"On October 5, 1911, they were sued to enforce the mortgage via ordinaria by Haight, holder of the mortgage note, and they set up the pleas of five and ten years' prescription.

"There was judgment against Mathilda M. Johnson for her virile share as widow in community, and in favor of the other defendants, dismissing the suit as to them. All parties to the suit have either appealed or answered the appeal.

"It is admitted that all the children of Pleasant Johnson would, if summoned as witnesses, testify that they knew nothing at all about this note until the suit was filed, and, furthermore,

that the payments of interest were made on said note by Mrs. Pleasant Johnson, their mother; that they were not made with their express or special authorization, but were made by their said mother individually; and that the succession of Joseph Johnson was never opened. This is confirmed by the testimony of the mother.

"It further appears that after her husband's death Mrs. Johnson remained in the mortgaged home with her children, and paid the taxes on the property. She was never appointed administratrix of the estate, nor did she qualify as tutrix of her minor children, and her right as usufructuary of her children's share was not recognized in the judgment rendered in 1911 putting them in possession.

"The plaintiff's argument is that Mrs. Johnson was the usufructuary of the whole property from the moment of her husband's death, and that, as usufructuary, she had the right under the law to retain the whole property, and to advance the money to pay the interest on the whole debt, thus interrupting prescription on the whole debt.

"In support of his views he cites: Succession of Pratt, 12 La. Ann. 458; Faurie v. Faurie, 11 La. Ann. 297; Moore v. Moore, 20 La. Ann. 160; [Boyle v. Sibley] 22 La. Ann. 446; [Succession of Mitchell] 33 La. Ann. 354; [Succession of Fitzwilliams] 3 La. Ann. 490; [Succession of Bringier] 4 La. Ann. 389.

"Plaintiff further argues that the mortgage is an indivisible debt, and that he has the right to enforce it for the whole amount on the whole property, and he cites R. C. C. arts. 2111, 2112, 2114, 1433, 578.

"He also urges that the decision in Long v. Dickerson, 127 La. 347 [53 South. 598], is directly in favor of his contention that the usufructuary had the right to interrupt prescription as to all parties defendant by the payment of interest.

"The defendants claim, on the other hand, that Mrs. Johnson was never appointed administratrix of her husband's estate, and had never qualified as tutrix of her minor children, and that the payments were made without the authorization of her children, and are therefore not binding on them, and that as joint owner she was not bound in solido with them, and could not interrupt prescription as to them. R. C. C. 3552.

"They cite [Gay v. Hebert] 44 La. Ann. 303,[1] Grant v. Maier, 32 La. Ann. 51, R. C. C. 2997, and 3552, and claim that Long v. Dickerson stands alone in our jurisprudence, and was decided by a divided court.

"Under the circumstances above disclosed, we therefore submit for answer the following questions:

"(1) Can a widow in community, joint owner with her major and minor children of real estate upon which her deceased husband granted a mortgage, interrupt prescription as to the virile share of her children by payment of interest on the mortgage note, where her husband's succession has never been opened, and she has never been recognized as usufructuary, administratrix, or tutrix, and she has never received authority from her children, co-owners, to make such payment?

"(2) Is the doctrine of Long v. Dickerson, 127 La. 341 [53 South. 598], applicable to such case, or is the codal provision of R. C. C. 3552, to be applied, which declares that solidary debtors only can interrupt prescription as to their codebtors?"

### Opinion.

It appears from the foregoing statement that "there was judgment against Mathilda M. Johnson for her virile share as widow in community," from which, and from the presumption arising from the law (C. C. 2399, 2400; Succession of Pratt, 12 La. Ann. 457), we assume that there existed a community of acquêts between Mrs. Johnson and her husband, and that the property here in question belonged to it. We must further assume that her husband did not dispose of his estate by last will, and hence that at his death, his widow, being the owner of one undivided half interest in said property, acquired, by operation of law, the usufruct of the other undivided half interest at the same moment that the children of the marriage acquired by inheritance the naked ownership thereof, subject to said usufruct—the rights of all parties being also subject to, but not postponed until, the payment of the debts of the community. Being already in possession, defendants required no order of court to put them in possession, and that the succession of the husband and father was not opened until after a lapse of 13 years, and that the judgment, which was then provoked by the public administrator, though putting them in possession as "widow and heirs," failed to recognize the widow as usufructuary, does not alter the fact that her right of usufruct had attached at the moment of her husband's death, and that she had been in the active enjoyment of it, at least, up to the date of said judgment. As usufructuary, she was liable to all the

[1] 10 South. 775.

annual charges to which the property was liable. C. C. 578. If the creditors of the community had brought suit to enforce payment of the debts due them, and she had been unwilling or unable to advance the money to pay them, the heirs, if sued, might have sold a sufficient amount of the property subject to the usufruct to satisfy the demand against them. C. C. 584. If the widow had advanced the money to pay such debts, or had assumed them, she would have been entitled to be made whole with reference to such payment or assumption, upon the termination of her usufruct, in so far as between herself and her co-owners debts were discharged for which the property held in usufruct was liable, save that she would not have been entitled to recover interest upon the amounts so advanced or assumed by her. On the other hand, if the heirs had advanced the money required to pay the debts, she would have been compelled to allow them interest during her usufruct upon the money so advanced. C. C. 578, 585. The law which authorizes the usufructuary to pay the debts for which the property held in usufruct is liable does not require that Mrs. Johnson should, in that capacity, have paid all the debts, or the whole of any debt, at one time. If, therefore, by arrangement with the creditors, she was allowed to pay some of the debts at one time and was granted delay with respect to the others, or was allowed to pay all the debts, by installments upon each of them, she was within the authorization conferred upon her, and the heirs have no cause of complaint, so long as she did not allow obligations, in the form of unpaid interest, the payment of which might eventually have been demanded of them and enforced by sale of the property subject to the usufruct to accumulate; for, while she was authorized, but not compelled, to advance money for the payment of debts with which said property was burdened, the law imposed upon her the obligation of paying the annual charges for which the property was liable, and interest upon a debt which bore upon the property and the term of payment of which was extended on condition that the interest be paid from year to year was an annual charge for which the property was liable. The propositions thus stated have been in the main considered by our predecessors, and they have expressed themselves, in part, as follows:

"Anne Fitzwilliams died intestate in August, 1844, leaving two children, the issue of her marriage, with her surviving husband. She left, also, a succession in community with her surviving husband and heirs, consisting of a plantation and slaves, incumbered with debts to a large amount. The husband preserved the property in kind, and administered it, applying the revenues to the payment of the debts. In June, 1846, he contracted a second marriage, and thereby forfeited the right to the usufruct of one-half of the community conferred by the act of 1844 (Laws 1844, No. 152). Subsequently he applied for the administration of the succession, caused the property to be sold, and presented an account in which he claimed the entire revenues of the community property from the death of his wife until his second marriage, and a salary for his services as overseer and manager of the property during that time. These items were opposed by one of the two heirs. The opposition was sustained, and the administrator has appealed."

After quoting the second section of the act of 1844, conferring the right of usufruct on the surviving spouse in community (now C. C. 916), the court proceeded as follows:

"The right conferred by this act on the survivor is to hold in usufruct the share in the community property inherited by the common issue. That share must necessarily consist of the residue after the payment of the debts. The statute has not given to the survivor the usufruct of all the community property, regardless of the debts, nor has it impaired the rights of either the creditors or the heirs to insist on a prompt payment of the debts of the community. * * * The usufruct created by this act must be governed by the rules established in the Code on the same subject. By these rules both the creditors and the heirs may claim that property subject to the usufruct be sold to an amount sufficient to pay the debts, unless the usufructuary prefer to advance the sum necessary for that purpose.

"At the death of the wife the rights of the parties, respectively, were fixed by law. The

survivor has his election either to sell community property to a sufficient amount to discharge the debts promptly and to exercise his usufructuary right upon one half of the residue, or, if he preferred to preserve, the property unsold he could do so on paying the debts himself, or on assuming them, thereby relieving the heirs from the burthen of the interest, which might ultimately absorb their entire inheritance. In the latter event, the usufructuary is entitled to the entire fruits produced by the property, the fruits being deemed equivalent to the interest on the sums advanced. C. C. 578, 579 (now 584, 585). But he cannot retain the property unsold, leave the debts unpaid, to the prejudice of the heirs, and return it to them, at the expiration of the usufruct, incumbered with the additional burthen of the interest which may have accrued in the meantime. If these propositions be correct, it follows that the surviving partner, who retained and administered the property in kind, which could not be done to the detriment of the heirs, must in his settlement with the latter be considered as having assumed, or paid, the debts with which it was burthened at the death of his wife. He must, therefore, be ranked as a creditor on the proceeds of the sale for the amount of those debts at that date without interest, and is not accountable for the revenues received during the existence of the usufruct." Succession of Fitzwilliams, 3 La. Ann. 489.

In another case it was said:

"We do not think that the fact of the surviving wife having taken out letters of administration in any manner affects her usufructuary rights. Those rights depend upon the statute, and upon the provisions of our law regulating usufructs. By the terms of the statute the survivor takes the usufruct of so much of the share in the community as may be inherited by the heirs. That share consists of the one-half which belonged to the deceased, subject to the debts. With that incumbrance it descends to the heirs from the instant of the ancestor's death. The right of the survivor to the usufruct of that inheritance attaches at the same moment that the right of property accrues in favor of the heirs. * * * The interpretation contended for by the appellees would suspend the exercise of the usufructuary right until the debts were discharged, and then limit it to the residue. It could only be maintained on the ground that the existence of debts was incompatible with the exercise of the usufruct; but no such incompatibility exists. On the contrary, our laws provide amply for that contingency, and permit the usufructuary in such cases, to retain the whole property and receive its fruits, on making the necessary advances, to discharge the debts, which advances are to be reimbursed, without interest, at the termination of the usufruct, or to sell the property to an amount sufficient to discharge them unless the heirs will make the advances, and

to exercise the right upon the residue." Succession of Bringier, 4 La. Ann. 389.

What Mrs. Johnson did with respect to the debt here in question was what she was authorized by law to do, to wit, she arranged with the creditor to extend the term of payment from year to year on condition that she pay the interest from year to year; and in paying the interest she did what the law required her to do. The result was that at the expiration of 13 years the property remained to her and to the heirs intact in exactly the condition as to the debt for which it was liable in which she received it, and the present insistence of the creditor upon the payment of the debt places matters in exactly the condition in which they would have been if he had so insisted when the usufruct began.

If the major heirs did not know, when, with their mother, they went into actual possession of the property in question in 1898, that it was incumbered by a mortgage debt, created by their father, and if they never heard of that debt in the 13 years which followed, during which their mother was paying the interest thereon year by year, we have only to say that they ought to have known it, and that it makes no difference whether they knew it or not. If the interest had not been paid, the property would long since have been sold by the sheriff. By reason of such payment, the property has been preserved to them up to the present time, and they ought not to be permitted to derive all the benefit of what has thus been done, and at the same time repudiate the correlative obligation resulting therefrom. Apart from that consideration, however, we are of opinion that the law which authorizes the widow in community in her capacity as usufructuary to pay, or assume, or obtain an extension of time for the payment of, a community debt, which imposes upon her the obligation of paying the

interest upon such debt, and which, in case of such payment or assumption by her, entitles her to be made whole with respect thereto, at the termination of her usufruct, cannot be construed to mean that the payment of the interest year by year, in consideration of which the debt is extended year by year, is not an acknowledgment of the debt which binds all who were originally bound therefor. If she had made such payments as tutrix administering the estate, it would be conceded, we imagine, that they would have had the effect as to the minors of keeping the debt alive, in so far as it bears upon the mortgaged property, and that concession would be made because, as tutrix, she would have been authorized by law to represent the interest of the minors, and to pay, or obtain an extension of the term of payment, as conditions might have required. It is true that the minors, being beneficiary heirs, were not, and are not, liable for the debt beyond the value of the property inherited by them, but, on the other hand, they take from the succession of their father only such property as may be left after the debts contracted by him shall have been paid; and, as it would have been the function of their tutrix to administer their estate, such as it may have been, her payments and receipts, in the course of such administration and of the administration of their father's succession, would have been binding on them. But, as we have seen, although their mother did not qualify as tutrix or administratrix, the law, immediately upon the death of her husband, gave her the usufruct of his estate, authorized her to deal with the debts of the community as has been stated, and required her to pay the interest upon them, when the money was not advanced to pay the principal, and she made herself liable personally for one half of those debts by taking possession of the property of the succession without having caused an inven-

tory to be made, while the major heirs made themselves liable jointly in the same way for their proportion of the other half. Hen. Dig. vol. 1, 889 (3); vol. 2, 1468, No. 8; Saloy v. Chexnaidre, 14 La. Ann. 567; Martin Davie & Co. v. Carville, 110 La. 862, 34 South. 807.

In the article of the Civil Code upon which defendants rely (article 3552), it is provided that a "citation served upon one debtor, in solido, or his acknowledgment of the debt, interrupts the prescription with regard to all the others and even their heirs," but that:

"A citation served on one of the heirs of a debtor in solido, or the acknowledgment of such heir does not interrupt the prescription with regard to the other heirs, even if the debt was by mortgage, if the obligation be not indivisible. To interrupt this prescription for the whole, with regard to the other coheirs, it is necessary, either that the citations be served on all the heirs of the deceased debtor or the acknowledgment be made by all the heirs."

It will, however, be seen at once that the relations between joint heirs of an estate are quite different from those which the law establishes between one who is not only an owner in indivision with them and with each of them, but is also the usufructuary of their respective undivided interests, and, as such, is vested with the rights and burdened with the obligations to which we have referred, and with which the heirs, as between themselves, are not so vested or burdened. Nevertheless, article 1433 of the Civil Code reads:

"Although the heirs and other successors under a universal title are personally bound for the debts of the succession only in proportion to their respective shares in the succession, yet, one heir may be bound to pay the whole debt by an hypothecary action, when the property fallen to his share has been mortgaged by the deceased; but he has recourse against his coheirs, or the other successors, standing in their place, for the amount which he has been bound to pay for the discharge of the mortgage debt."

Which is a recognition of the principle that, though the relations of joint heirs to each other with reference to the debts of the succession are ordinarily distinct, and

one is not bound to pay the proportion due by the others, yet when, acting under the authority thus granted and the compulsion thus authorized, one heir does pay the whole of a debt, his relation with his coheirs are changed, and are governed·by the rule which governs in cases of debtors in solido. In Gay v. Hebert, 44 La. Ann. 306, 10 South. 775, cited by defendants, it appeared that Hebert bought certain property and gave notes for part of the price; that his wife died shortly afterwards, and that her succession was opened, the surviving husband qualifying as tutor of the minor children of the marriage; that none of the notes mentioned were paid; and that, when suit was brought on them, via executiva, they all appeared to be prescribed, but that Hebert had obtained an extension and waived prescription before it had run on certain of the notes, and, after it had run, on others, acting, as we infer, in his individual name. It was asserted ·on behalf of the minors that the notes had become prescribed as to their interest in the mortgaged property, and the court sustained that contention, as to those upon which the term had expired before the extension was obtained, but held otherwise as to those upon which prescription had been waived before the completion of the term; and, referring to the waiver, said:

"Nevertheless, Hebert had the right, before prescription had extinguished the last two matured notes, to acknowledge them, as he did, in the extension act, and thus interrupt prescription, and the privilege and mortgage securing them on the undivided half bought, could be and was maintained. It was a community debt, and the acknowledgment was made bona fide and rightfully. He was unquestionably at the time owner of * * * one fourth of the whole, and the usufructuary of the remaining like share. The act of extension shows that he was dealt with in that capacity, and thus implies an inheritance by the minors of their mother's share by her death. It was unnecessary for him to have acted avowedly as tutor of the minors in order to bind them by such acts, and to continue the debt as a community debt secured in the same way that it was from the beginning."

In the case of Grant et al. v. Maier, Administratrix, and Moore, Tutor, 32 La. Ann. 51, it appeared that the widow in community qualified as tutrix, and for two or three years paid the interest upon a mortgage note which had been executed by ·her husband. She then remarried without provoking action by a family meeting, and thereby forfeited the tutorship. She, however, continued to pay interest on the note for a period extending more than five years from its maturity. And thereafter, when the dative tutor raised the question, it was held that the payments made before the second marriage of the mother, and while she was tutrix, interrupted prescription, but that those which were made after she had forfeited the tutorship, did not have that effect. The opinion of the ·court does not refer to the mother's rights and obligations as usufructuary, and, as she forfeited the usufruct when she married again, it is evident that the case has no bearing upon the questions here considered.

In the case of Long v. Dickerson, 127 La. 341, 53 South. 598, it appears that Dr. McCulloh died, leaving a widow in community, several major children, and an unpaid mortgage note. The widow qualified as administratrix and remained in office for about eight years, when, upon the joint petition of herself and the heirs they were put in possession of the estate of the community, she, as owner of one half and usufructuary of the other half, and they, as owners of the other half, subject to her usufruct. Thereafter she paid interest on the mortgage note for 11 years, and, when finally the holder foreclosed, the heirs enjoined, pleading prescription, as to their part of the debt. This court held that the plea was not well founded, and in the course of the opinion which was handed down dealt with the facts, as presented, and said that plaintiffs (in injunction) knew that one-half of the debt represented by the note was their debt, and not the debt of their mother;

that the creditor could, at any time, have compelled them to pay said debt, and have enforced the payment by a sale of the property; that, when their mother obtained yearly extensions by payments of interest, she acted with their knowledge, and hence, with their consent, express or tacit, it made no difference which, and that they thereby constituted her their agent for carrying the debt by payment of interest. Beyond that, however, the opinion proceeds:

"No doubt, if payments were made on a debt by a mere intermeddler, prescription would not be interrupted. But the joint debtor of the plaintiffs and joint owner with them of the property upon which the debt was secured by mortgage, and usufructuary of their half of the property, was not an intermeddler. She had the right, nay, under the circumstances, owed the duty to pay the interest, in order that the property might not be seized and sold, as is now being done, to satisfy the debt."

The decision did not therefore rest wholly upon the ground that the heirs were bound by reason of their knowledge of and acquiescence in what was done; but partly on that ground and partly on the ground that, by reason of their relations to the debt and property in question, their mother had rights and was burdened with obligations by the exercise and discharge of which they necessarily became bound.

We are referred by plaintiff's counsel to several articles of our Code on the subject of divisible and indivisible obligations, including article 2113, which reads:

"Art. 2113. Every one of those who have conjointly contracted an indivisible debt is liable to the whole, even though the obligation was not contracted in solido."

And including articles 2111 and 2112, which establish the rule that:

"Art. 2111. An obligation susceptible of division must be executed, between the debtor and creditor, as though it were indivisible. The divisibility is applicable only with regard to heirs, who can demand, of the debt, who are liable to pay of it, only the part which they hold or for which they are liable, as representing the creditor or the debtor."

And provides the exceptions:

"Art. 2112. To the principle laid down in the preceding article, there is an exception with regard to the heirs of the debtor: (1) In case the debt be on a mortgage. * * *"

We do not, however, find it necessary, or, in view of the present length of this opinion advisable, to further pursue the subject, though the suggestions of the learned counsel indicate additional grounds in support of our conclusions.

For the reasons assigned, our answers to the questions propounded are as follows:

(1) It does not appear that the deceased husband disposed of his estate by last will; hence, the widow in community, joint owner with her major and minor children of the community property, became immediately upon the death of her husband the usufructuary of the interest inherited by the children, and in the double capacity of owner in indivision and usufructuary was authorized to pay the debt of the community which was secured by mortgage on the entire property, or obtain extensions of the term of payment, by paying the interest, from time to time, and such payments operated as interruptions of prescription as to the whole debt, and this, though she had never been judicially recognized as tutrix, administratrix, or usufructuary, and had not been authorized by her children to make such payments.

(2) The doctrine of Long v. Dickerson, to the extent to which it is applicable to the facts, is to be applied in such case, and not the codal provisions of R. C. C. 3552.

See dissenting opinion of BREAUX, C. J., 60 South. 253.