## SUCCESSION OF BRINGIER.

Decision in *Succession of Fitzwilliams*, 3 An. 489, as to the share of the surviving spouse,
    and the nature and extent of the usufruct, under sec. 2 of stat. of 25 March, 1844, affirmed.
The fact of a surviving spouse having taken out letters of administration on the estate of the
    deceased, does not in any manner affect her usufructuary rights under the stat. of 25 March,
    1844, s. 2.   By the terms of the statute the survivor takes the usufruct of so much of the
    share of the deceased in the community property as may be inherited by the heirs.   That
    share consists of the one half which belonged to the deceased, subject to the debts.   With
    that encumbrance it descends to the heirs, from the instant of the ancestor's death.   The
    right of the survivor to the usufruct attaches at the same moment that the right of property
    accrues in favor of the heirs.   *Per Cur.*   The usufructuary is permitted, in such a case, to
    retain the whole property and receive its fruits; on making the necessary advances to dis-
    charge the debts, which are to be reimbursed, without interest, at the termination of the
    usufruct; or he may sell property to an amount sufficient to discharge the debts, unless the
    heirs will make the necessary advances; and he may exercise his right upon the residue.
    C. C. 578, 579.   Nor is the exercise of the right of the usufructuary inconsistent with that
    of the heirs, or of the creditors, to insist on a speedy adjustment of the debts of the com-
    munity, and on a sale of property for that purpose, if necessary.

A PPEAL from the District Court of Ascension, *Nicholls*, J.
    *Preston* and *Ilsley* for the opponents.   The questions for solution are :
*First.*  Can a surviving widow, or the heirs of the deceased, claim from an
administrator any portion of the community property, or of the revenues derived
therefrom while the same is under administration, until all the debts and charges
thereof are paid, and the same is fully liquidated?

*Second.*  Can a usufructuary under the act of 25th March, 1844, claim any
greater rights than the owner would have enjoyed, if no such law existed?   If
anything be settled by the jurisprudence of this court beyond all controversy, it
is that neither a widow nor heirs can claim anything but a residuum of an estate ;
that is, whatever may remain after its final liquidation.

The propositions assumed by the appellees, and finally concurred in by the
lower court, were :  1st.  That some of the heirs accepting unconditionally, and
others with the benefit of inventory, the succession must be administered.   C.
C. 1031, 1040.   2d.  That the duties and responsibilities of administrators are the
same as those of curators of vacant successions.   C. C. 1042.   3d.  That *the
fruits and revenues* of a succession must be administered and accounted for by
the administrator.   C. C. 1140.   4th.  That the sale of succession property cannot
be made without absolute necessity.   C. C. 1158. 17 La., 503.  5th.  That neither
the widow in community, nor the heirs of the deceased have more than a resi-
duary and eventual interest, which can only be ascertained and claimed after a
full administration and final settlement of the affairs of the succession.   Civil
Code, 1066.   1 Rob. 407.   17 La. 502, 288, 104.   8 La. 409.   17 La. 246.
10 Rob. 459.   11 Rob. 51, 75.   12 Rob. 43, 217.   9 Rob. 200.   4 Rob. 414,
459.   5 La. 386.   7 Rob. 404.   6th.  That this residuum is the portion inherited
by the heirs, and to that share, so ascertained, alone, does the act of 25th March,
1844, apply.

To test the correctness of these propositions we must suppose that the adminis-
tration of *Bringier's* estate was in other hands than in those of his widow, and

SUCCESSION     then inquire whether the act of 25th March, 1844, would present any legal
OF        obstacle to the settlement of the succession, in conformity with the legal rules
BRINGIER.   previously laid down for his government. The usufruct given by the act of 1844
to the surviving spouse, operates " on so much of the share of the deceased as
may be inherited by such issue." And the question that here arises is, *when*
does this usufruct commence ? Suppose that the widow herself claimed from
the administrator the revenues of her half of the community property during the
administration, would he not be sustained by the law, and by the repeated
decisions of this court, in replying that she was only entitled to one half of the
balance found due after a full administration and payment of all the debts and
charges of the estate. See *Succession of Thomas*, 12 Rob. 217. In the case of
Arthur vs. Cochrane, 12 Rob. 43, it was ruled that " a succession cannot be said
to be the property of the beneficiary heirs, and does not legally come into their
possession until it has been administered upon in due course of law." After
having paid the creditors, deducted his commissions and other lawful expenses,
if a balance remains in his hands, the administrator shall pay it over to the heir.
C. C. 1066. The fruits and revenues must be administered and accounted for
as the other effects of the succession. C. C. 1141. And without necessity the
real estate cannot be sold. C. C. 1158. 17 La. 502.

If, then, the widow could not legally require another administrator to account
to her at once for the revenues of the estate, by what authority can she, because
she is the administratrix, legally retain it ? Should the position contended for
by the widow be sustained, it would lead in many instances to the greatest
injustice. It might happen that a large estate, encumbered with mortgages and
privileges, would not suffice to pay ordinary creditors, when, by applying the
revenues of the estate to that purpose, while the same is under administration,
the assets would be ample to meet at once all liabilities. And yet if the surviving
spouse could at any time claim the revenues from the administrator, the creditors
might often seek in vain to coerce the reimbursement of the fund so paid to be
applied to the debts, and the unconditional heir would be bound for their payment.
Such a construction cannot be given to the law, without violating principles that
have been long firmly established upon the highest authority.

If it were necessary to suggest any other authority in support of the doctrine
contended for by the appellees, it is that while the law authorises a surviving
spouse to have property in common between him and his children adjudicated
at the price of estimation, no such adjudication can be made before a liquidation
of the community, showing the *real amount of the acquests*, and until the debts
of the community are paid. *Hall* v. *Foley*, 17 La. 378.

We contend, then, in the language of the judgment appealed from, to which
we refer, that the right of the applicant, as surviving partner in community, com-
mences only after the estate is finally settled by the payment of the creditors of
the estate ; and that the usufruct is restricted to the residuum belonging to the
estate, the amount, nature, and character of which can be determined only on
such final settlement ; that the revenues in the hands of the applicant are assets
belonging to the succession of *M. D. Bringier ;* and that these assets, constituting,
as it is admitted, a cash fund abundantly sufficient to meet the liabilities of the
succession, there is therefore no legal necessity for a sale of any portion of the
property of the estate to effect that object.

*Berault*, for the appellant. This case presents two questions growing out of
sec. 2 of the stat. of 25 March, 1844, relative to community property. Of those
two questions the one involving the constitutionality of the act above recited will
be first disposed of, as on its fate depends that of the second, concerning the
rights of the usufructuary.

The legislature can certainly claim the right to regulate the order of descent,
and to new-model and fashion, for the future, the law of successions. It can, if it
thinks fit, exclude the son from the estate of the father, and vest the inheritance in
any one else. As regards the rights of the surviving partner in community, they,
resulting from a contract, must be governed by the law in force at the time of the
celebration of the marriage, because she holds by purchase, whereas the rights
of the heirs to the share of the deceased in the acquets which form a part of his
succession are to be regulated by the law in operation at the opening thereof,
notwithstanding it may have been different at the time the property was acquired.
The right of the heirs cannot be vested until the ancestor is dead, and this on
the strength of the maxim, " *memo est hæres viventis.*" See *Dixon* v. *Dixon*, 4
La. 191. 2 Blackstone, 208.

The second question of law is, when does the right of usufruct under the act of 1844 accrue?

Before discussing this point, let us examine the first of the propositions assumed by the counsel of the opponents and adopted by the court below in its judgment.

That some of the heirs accepting unconditionally, and others with benefit of inventory, the succession must be administered.   C. C. 1034, 1040.

Were the provisions of our Civil Code, and the numerous decisions of the late Supreme Court, (with the exception of the case of *Irwin* vs. *Orillon*,) to be taken as our sole criterion, the above rule might be considered an inflexible one. But such is not the case.   Those provisions are controlled and modified by art. 976 C. P. which renders the appointment of an administrator imperative only when the creditors of the succession require it.   This point was directly made and passed upon in the case of *Bryan* v. *Atchison*, 2d An. 465.   The court, in commenting upon the principles of the two Codes, said : "It is true that, under the dispositions of the Civil Code, when the heirs claimed the term to deliberate, an administrator was to be appointed in all cases; and when the succession was afterwards accepted under the benefit of inventory, the administrator was to continue in his functions, and to settle and liquidate the succession.   But the Code of Practice, subsequently adopted, provides that an administrator shall be appointed in such cases, *if any of the creditors of the succession require it* ; and this we take to be the rule now in force, as being the last expression of legislative will, and having, moreover, the advantage of being founded in reason. and harmonizing with the other provisions of the Code of Practice regulating the administration of successions.   C. P, art 976."   2 An. 465.   In that case the heirs were all minors, and their natural tutrix, as such, could legally administer the succession and sue for a sale of the property.   The principle is the same when the heirs of age have accepted unconditionally, and the minors under the benefit of inventory.   In such a case, when no administrator has qualified, the heirs of age concur with the tutor of the minors, in the prosecution of suits to recover debts due the estate, and are joined with the latter in all actions against it.   *Irwin* v. *Orillon*, 8 La. 213.   From these two decisions we draw the conclusion that, the appointment of an administrator is not legally indispensable to the settlement of a succession.

The second proposition, that the duties and responsibilities of an administrator are the same as those of curators of vacant successions (C. C. 1042), and the third, that the revenues and fruits of succession property must be administered and accounted for by the administratrix (C. C. 1140) are not denied ; the administratrix accounts for those fruits and revenues to those entitled to them, be they the survivor, heirs, or legatees.   The fourth proposition : "that the sale of succession property cannot be made without absolute necessity (C. C. 1158)," will not be discussed, as it is admitted that the debts of the succession would require the sale of the property described in the petition, if the proceeds of the crops, or the fruits and revenues made since the opening of the succession, are not first applicable to the payment of those debts.

The fifth proposition is, "that neither the widow in community, nor the heirs of the deceased, have more than a residuary and eventual interest, which can only be ascertained and claimed after a full administration and final liquidation and settlement of the affairs of the succession."

By the act of 1844, the survivor shall "hold in *usufruct*, during his or her natural life, so much of the share of the deceased in said community property as may be inherited by such issue."   The community, which formerly existed between *Bringier* and his surviving wife, was dissolved by the death of the former. The survivor was then seized of one undivided half thereof, which she holds by purchase, and the heirs of the deceased of the other half, which they take by descent.   One half of said community, at its dissolution, fell into the succession of the late *M. D. Bringier*.   A succession is defined to be "the transmission of the rights and obligations of the deceased to the heirs."   C. C. 867.   It "becomes open by death, or by presumption of death caused by long absence, in the cases established by law."   C. C. 928.   It is acquired by the lawful heir, who "is called by law to the inheritance *immediately after the death of the deceased person to whom he succeeds*."   "This rule refers as well to testamentary heirs as to instituted heirs and universal legatees, but not to particular legatees."   C. C. 934. "The right mentioned in the preceding article is acquired by the heir by the operation of law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it."   "Thus children, idiots, those who are

SUCCESSION
OF
BRINGIER.

ignorant of the death of the deceased, are not the less considered as being seized of the succession though they be merely seized of right, and not in fact." C. C. 935. The instant the breath departs from the body of the ancestor, the heir is seized of his succession. C. C. 936, 938, 940, 941. "It is at the moment of the opening of the succession that the capacity or incapacity of the heir is considered." C. C. art. 944. The above provisions are emanations of the well known principle, "Le mort saisit le vif." *Bringier's* heirs, at his death, were seized of and inherited that half to which the usufruct granted to the widow by the act of 1844 attaches, at the very instant it was inherited by the heirs of her deceased husband, to wit, the period of his death.

We will now examine the survivor's rights as usufructuary, and ascertain in what manner they may be affected by the claims either of the creditors or heirs. *Bringier* died leaving the appellant as his surviving wife, and nine heirs, five of whom are of age, and four minors, under the natural tutorship of appellant. A community of acquets and gains existed between the deceased and his surviving wife, the value of which amounts to more than a million of dollars, and the debts to $88,309 94; and to the question of law we will assume that the crops, revenues, etc., of the community, accruing since its dissolution, amounts to the like sum of $88,309 94. The widow, qualified as administratrix of his estate, and has always been in the possession of all the property belonging thereto and to the community. Under the act of 25th March, 1844, she is to be viewed as an usufructuary under an universal title. C. C. 1604, 580. The law which governs her rights, as such, is to be found in arts. 577, 578, 579, 580, 581 C. C.

Suppose that the widow should come forward, and, out of her own funds, pay those debts. How would she then stand towards the heirs of her husband? As a creditor for the sum of $44,154 97, to be reimbursed at the termination of the usufruct, without interest, as by that advance she prevents the sale of so much of the property subject thereto as would be necessary to extinguish that amount of debt, and thereby reaps the profits etc. thereof. If the heir makes the advance, *interest is due to him,* as by means of that advance the usufructuary enjoys the fruits etc., of the property, the alienation of which the advance has avoided. If neither the heir nor usufructuary furnish the funds necessary to pay the creditors, a sale then takes place of so much of the property subject to the usufruct as may be requisite to extinguish the contribution under art. 580.

Let us suppose another case: A dies in the month of September, leaving several heirs, and a sugar plantation worth $200,000. He bequeaths the usufruct of one half of his property to B. A few days after A's death, his heir qualifies as executor; B immediately demands the delivery of the estate subject to the usufruct. Within three months from this demand of delivery, a crop of sugar worth $20,000 is made, which belongs to B, according to art. 538 C. C., which provides that "the natural fruits, or such as are the produce of industry, hanging by branches or by roots at the time when the usufruct is open, belong to the usufructuary; and fruits in the same state at the moment when the usufruct is at an end, belong to the owner." The amount of the debts of A's succession is $20,000. The executor pays these $20,000, with the proceeds of the crop. B dies a short time after. What can his heirs claim from the estate of A? Why the reimbursement of the half of the revenues, to wit, $10,000, without interest, which sum the executor appropriated to the payment of the debts, such appropriation being equivalent to an advance on the part of B, the return of which, at the termination of the usufruct, is dictated by art. 581.

A third example can be put: A dies, leaving a surviving wife in community, and an heir of age, and a minor heir. The community is entirely free from debt. The succession is accepted unconditionally by the heir of age, and under benefit of inventory for the minors. There are debts due the estate: the heir of age qualifies as administrator, and proceeds to reduce them to possession. During the interval between the death of A and the rendition of the final account of administration, the fruits of the community property received by the administrator amount to $10,000. To whom is the administrator to account for those revenues? Why, to the widow of A, most assuredly, who is entitled to half of that sum in her own right, as owner of one half of the acquets, and to the other half as usufructuary, under the act of 1844. Yet, according to the doctrine contended for by appellees, the half of that sum would belong to the heirs, and would constitute merely a fund, to the civil fruits of which only the survivor would be entitled. Such a doctrine is at variance with the provisions of our Code, and would, were it to obtain, defeat the very object of the act of 1844, which was

not passed solely with a view to protect the surviving parent from the demands of heirs who may become emancipated by marriage, or attain their majority after the dissolution of the community, but also for the purpose of affording the surviving husband or wife a respectable maintenance out of *that property*, which the law considers " *as the produce of the reciprocal industry and labor of both.*" C. C. art. 2371.

To show the consistency and equity of the principle urged by the appellant, and the harmlessness of its operation, either as to the heirs or creditors, I will introduce another example. A's succession consists of community property, valued at $100,000. The debts of the community amount to $10,000, with eight per cent interest from his death. The revenues for the first year amount to $10,000, which the administrator paid over to his surviving wife. The creditors, at the end of the year, press their claims, which amount, in principal and interest, to $10,800. To avoid the sale of any part of the property, the surviving wife and usufructuary advances that sum. She contracts a second marriage, which, by the proviso of the act of 1844, puts an end to the usufruct. What can she, as usufructuary, claim from the heirs of A? Only the sum of $5000, without the interest of $400, the other $5400 having extinguished half of the debts for which, as partner in community, she is personally liable. The reason is obvious: the right of the heir to sell a part of the property subject to the usufruct, sufficient to meet the sum for which that property is liable, and the obligation of the usufructuary to submit to that sale, or make the advance required by articles 580, 581, were coeval with the opening of the succession. The usufructuary having enjoyed the fruits and revenues of so much of the property as might have been sold at that period, at the instance of the heir, and not having at that time made the advance, which would have prevented the accumulation of interest, her claim for $400 is compensated by the fruits of that portion of the property, of which, had she refused at the first of the year to make an advance, she would have been dispossessed by a forced sale.

It is evident, from arts. 577, 578, 579, 580, 581 of the Civil Code, that the right of usufruct conferred by the act of 1844, accrued at the very moment of the dissolution of the community, and that there is nothing incompatible between the existence of debts due by it, and the exercise of that right from that period. The articles cited expressly and amply provide for such a case, and the fallacy of the appellees' proposition consists in the idea that the interest of the usufructuary cannot be placed under the charge of the administrator, accountable for the revenues and fruits received by him, and that nothing, save what may enure to the benefit of the heirs, can be the object of his solicitude. This, I apprehend, would place the surviving usufructuary under an universal title, in a worse position than a legatee under a particular one, who can claim the proceeds, and interest, of the thing bequeathed, from the day the demand of delivery was formed, C. C. 1619; and, if it be the legacy of an annuity or pension bequeathed by way of maintenance, from the day ef the decease, without having brought suit for the same. C. C. 1624. To the latter bequest the act of 1844 can be assimilated, as its object, as has been already stated, was to afford a proper maintenance to the surviving spouse.

The issue before the court is one between the appellees, heirs of *Bringier*, and the widow, as usufructuary under an universal title, and is confined to them. The question is, *as regards the heirs*, what are the rights of the usufructuary to the revenues etc., of that half of the community by them inherited? The solution of that question is found in the Code, art. 577 to 581. The ownership of the heirs of *Bringier* in said property is an imperfect one. They possess the mere ownership (*la nue propriété*) of half the community, of which half the surviving partner has the *domaine utile*. C. C. arts. 481, 482. The demand of the heirs that the revenues of the community be applied to the payment of the debts, is based upon the assumption that they were seized of the perfect ownership, the *jus duplicatum* or *droit droit* to one half of the community property; when, in fact, between them and the appellant, they inherited the mere ownership, *la nue propriété*, to one half of the acquets, the act of 1844 vesting the *domaine utile* in the surviving partner at the dissolution of the community.

To conclude: It is contended on behalf of the appellant: 1. That, at the death of *Bringier*, his heirs were seized of, and inherited one half of, the community. 2. That to that half the usufruct of the surviving partner attached, at the dissolution of the community. 3. That, as regards the surviving partner, the heirs have but a mere right of ownership to the half of the community. 4. That, as

between the surviving partner and heirs, the latter have no right to demand that the revenues of the community, received since its dissolution, be applied to the payment of the debts. 5. That the heirs can only demand a sale of the property to pay the debts, when the usufructuary makes no advance. 6. That that advance is not obligatory on the part of the usufructuary, and that, in the absence of that advance, the heirs must make it, or submit to the sale. 7. That the revenues of the community since its dissolution are to be accounted for to the usufructuary.

The judgment of the court (*Eustis*, C. J. dissenting,) was pronounced by

KING, J. *M. D. Bringier* died in 1847, leaving a large succession, the greater part of which consisted of community property. His widow, who is the administratrix, applied for a sale of a part of the moveables, slaves, and lands of the succession, for the purpose of paying the debts of the community, amounting, as it is alleged, to a sum exceeding $88,000. Two of the heirs opposed the sale as being unnecessary, and alleged that the revenues derived from property of the community, since the opening of the succession, have been sufficient to discharge all the debts, and should be applied to that purpose. To this opposition the surviving widow answered, that one half of the crops, fruits, and revenues yielded by the community property since the death of her husband, belong to her in her individual right, as the surviving partner in community, and the other half, in virtue of her usufructuary rights under the act of the 25th March, 1844, and cannot be appropriated to the payment of the community debts. The opposition of the heirs was sustained; and, from the judgment dismissing the prayer for a sale, *Mrs. Bringier* has appealed.

It is conceded, for the purposes of this suit, that the debts amount to the sum stated in the petition, and that the revenues from the community property, since the death of *M. D. Bringier*, have been sufficient to discharge them. It is also admitted that, if the revenues be not applicable to the payment of the debts, a sale of the property specified in the petition will become necessary.

The question presented is, whether, under the act of 1844, the surviving widow is entitled to the usufruct of the share of the deceased in the community property, from the moment of the husband's death, and previous to paying the debts; or whether the debts must be first discharged, and the right exercised upon the residue. The second section of the act provides, "that in all cases where the pre-deceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed, by last will and testament, of his or her share in the community property, the survivor shall hold in usufruct, during his or her natural life, so much of the share of the deceased in said community property as may be inherited by such issue; provided, however, that such usufruct shall cease whenever the survivor shall enter into a second marriage." Acts of 1844, p. 99.

The provisions of this section were considered in the case of the *Succession of Fitzwilliams*, lately deided. 3 An. Rep. 489. We there said that: "The usufruct created by the statute was to be governed by the rules established by the Code on the same subject. At the death of the wife, the rights of the parties respectively were fixed by law. The survivor had his election either to sell community property to a sufficient amount to discharge the debts promptly, and to exercise his usufructuary right upon one half of the residue; or, if he preferred to preserve the property unsold, he could do so, on paying the debts himself, or on assuming them, thereby relieving the heirs from the burthen of interest, which might ultimately absorb their entire inheritance. In the latter event, the usu-

fructuary is entitled to the entire fruits produced by the property; the fruits of the property preserved from sale being deemed equivalent to the interest on the sums advanced. C. C. arts. 578, 579. But he cannot retain the property, leave the debts unpaid, to the prejudice of the heirs, and return it to them at the expiration of the usufruct, encumbered with the additional burthen of interest which may have accrued in the mean time."

We do not think that the fact of the surviving wife having taken out letters of administration in any manner affects her usufructuary rights. Those rights depend upon the statute, and upon the provisions of our laws regulating usufructs. By the terms of the statute, the survivor takes the usufruct of so much of the share of the deceased in the community property as may be inherited by the heirs. That share consists of the one half which belonged to the deceased, subject to the debts. With that encumbrance it descends to the heirs, from the instant of the ancestor's death. The right of the survivor to the usufruct of that inheritance attaches, at the same moment that the right of property accrues in favor of the heirs. Both rights spring out of the same event, and attach to the same property—that is, to half of the community subject to its debts; and, with this burthen, the survivor takes it.

The interpretation contended for by the appellees would suspend the exercise of the usufructuary right until the debts were discharged, and then limit it to the residue. This position is not supported by the terms of the statute, and conflicts with the rules which govern usufructs. It could only be maintained on the ground that, the existence of debts was incompatible with the exercise of the usufruct; but no such incompatibility exists. On the contrary, our laws provide amply for that contingency, and permit the usufructuary in such cases to retain the whole property, and receive its fruits, on making the necessary advances to discharge the debts, which advances are to be reimbursed without interest, at the termination of the usufruct; or to sell property to an amount sufficient to discharge them, unless the heirs will make the advances, and to exercise the right upon the residue. C. C. arts. 578, 579.

Neither the statutes, nor the enactments of the Code in relation to usufructs, present any impediment to the survivor's right attaching fully from the moment of the death of one of the parties; nor is the exercise of the right inconsistent with that of the heirs, or of the creditors, to insist on a speedy adjustment of the debts of the community, and on a sale of property for that purpose, if it be necessary.

Under our view of the law, *Mrs. Bringier*, as surviving widow, is entitled to the fruits produced by the community property since the death of her husband, and is only answerable for such interest as may have accrued in the mean time from unnecessary delays which she may have caused in discharging the debts with which it is encumbered.

We think, therefore, that the oppositions of *Kenner* and wife, and of *Trist* and wife, should have been overruled, and that the judge should have proceeded to order a sale.

It is therefore ordered that the judgment of the District Court be reversed, and that the opposition of *D. F. Kenner*, and his wife *Nanine G. Bringier*, and of *H. B. Trist*, and his wife *Elizabeth R. Bringier*, be dismissed. It is further ordered that the cause be remanded, for such further orders and proceedings as may be necessary to effect sales of property belonging to the succession in community between the widow and heirs of the late *Michel D. Bringier*, deceased, to an amount sufficient to pay the debts of said community, reserving the question

of *Mrs. Bringier's* liability for the interest which may have accrued on said debts, since the dissolution of the community; the appellees paying the costs of this appeal.