FRANCES MARCUS (FORMERLY FRANCES BLUMENTHAL), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35733. Filed June 30, 1954.

*E. Chas. Eichenbaum, Esq.,* for the petitioner.
*W. B. Riley, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge:* Petitioner's husband died intestate and under Louisiana law one-half of the community estate passed to petitioner in her own right as the surviving widow in community and the remaining half passed to their minor sons, subject, however, to petitioner's right as usufructuary in the community property inherited by the children. Approximately five months later petitioner renounced her rights to the usufruct. The first issue is whether petitioner is taxable, during the interim between her husband's death and her renunciation, on the whole income from the businesses, as determined by respondent, or whether, as petitioner contends, on only one-half with the other half taxable to her sons.[2] Respondent admits that the shop was jointly owned by petitioner and her sons after the renunciation.

The doctrine of the usufruct of the surviving spouse was added to the Louisiana Civil Code by legislative enactments, and the pertinent articles from the code are noted in the margin.[3]

Article 916, *supra*, footnote 1, the one with which we are primarily concerned, provides for a legal usufruct as distinguished from the testamentary or conventional usufruct. There is no requirement in

---

[2] The only amount in controversy from the shoe department is the amount distributed to petitioner and her sons.

[3] Dart's La. Civ. Code 1945.

[See footnote 1.]

Art. 534. Kinds of usufruct—Definitions.—* * * Perfect usufruct, which is of things which the usufructuary can enjoy without changing their substance, though their substance may be diminished or deteriorated naturally by time or by the use to which they are applied; as a house, a piece of land, furniture, and other movable effects.

And imperfect or quasi usufruct, which is of things which would be useless to the usufructuary, if he did not consume or expend them, or change the substance of them, as money, grain, liquors.

Art. 535. Perfect usufructs.—Perfect usufruct does not transfer to the usufructuary the ownership of the things subject to the usufruct; the usufructuary is bound to use them as a prudent administrator would do, to preserve them as much as possible, in order to restore them to the owner as soon as the usufruct terminates.

Art. 536. Imperfect usufructs.—Imperfect usufruct, on the contrary, transfers to the usufructuary the ownership of the things subject to the usufruct, so that he may consume, sell or dispose of them, as he thinks proper, subject to certain charges hereinafter prescribed.

Art. 537. Incorporeal property.—Usufruct is an incorporeal thing, because it consists in a right.

\*      \*      \*      \*      \*      \*      \*

Art. 556: Actions to enforce rights.—The usufructuary can maintain all actions against the owner and third persons, which may be necessary to insure him the possession, enjoyment and preservation of his right.

\*      \*      \*      \*      \*      \*      \*

Art. 567. Duties and liabilities of usufructuary.—It is the duty of the usufructuary to keep the things of which he has the usufruct, and to take the same care of them as a prudent owner does of what belongs to him.

He is accordingly answerable for such losses as proceed from his fraud, default or neglect.

\*      \*      \*      \*      \*      \*      \*

Art. 606. Termination by death.—The right of the usufruct expires at the death of the usufructuary.

article 916 that the surviving spouse accept the usufruct, although there is a provision that the usufruct should cease if the usufructuary entered into a second marriage. Under the Louisiana Civil Code the income from the usufruct in the personal property was, in effect, the equivalent of a life estate as known at common law. *Bellagie I. Newman*, 37 B. T. A. 72, 75; but see 20 Tulane L. Rev. 98; 20 Tulane L. Rev. 378; 21 Tulane L. Rev. 74. And if petitioner were actually a life tenant or had a life estate wherein she had the complete right of enjoyment and could draw all the profit, utility, and advantages of certain property, she would have an income tax liability for her income from the property. Sec. 22 (a) and (n) (5), I. R. C.; *Irene McFadden Winder, Executrix*, 17 B. T. A. 303; *W. H. Simmons*, 22 B. T. A. 1106.

It is proper at this point to note that the rule in *Bellagie I. Newman, supra*, does not control the present issue, because there the taxpayer came before us as executrix and not in her individual capacity as legatee and usufructuary. Here, although petitioner was tutrix for the children, there is no direct evidence of administration and Louisiana law would indicate that it may not be necessary, Dart's La. Civ. Code 1945, art. 1041, and the record shows that here all the income was distributed.

The basis of petitioner's argument is that the decedent's one-half share of the community property vested in her minor sons upon the death of her spouse but the usufruct does not come into being until it is claimed. On the other hand, respondent argues that the usufruct attaches by operation of law upon the death of petitioner's husband, and that when the widow is in possession of the property subject to the usufruct no act of acceptance of the usufruct is necessary.

Since the usufruct is a property right established by the Louisiana Civil Code, we shall look to the judicial decisions of that State to determine how and when that right vests. We have found that the usufruct of a surviving spouse attaches immediately upon the death of the deceased by operation of law. The usufruct becomes effective at the same moment the naked title vests in the heirs. Typical of the problems in the State courts involving the usufruct is whether the survivor takes the usufruct free from all debts at the moment of the demise of the deceased. And in these cases the courts have pointed out that while the survivor's right to the usufruct accrues immediately by operation of law and the survivor may retain the property and is entitled to its fruits and revenues, nevertheless the usufructuary takes the usufruct subject to community debts. *Succession of Fitzwilliams*, 3 La. Ann. 489; *Succession of Bringier*, 4 La. Ann. 389; *Haight* v. *Johnson*, 131 La. 781, 60 So. 248. See also *Succession of Marsal*, 118 La. 212, 42 So. 778, and 18 Tulane L. Rev. 182. While we are not con-

cerned with the end result in these State cases, the opinions do show us how and when the usufruct vests in the surviving spouse.

Under the Louisiana Civil Code petitioner had the right to receive all the income from the property inherited by her children. She was in physical possession of the property, see 21 Tulane L. Rev. 74, and she exercised the same authority over the businesses that her husband had exercised over them. These elements of ownership, and therefore the concomitant tax liability of petitioner, are similar to those in *Annie Inman Grant*, 11 T. C. 178, affd. 174 F. 2d 891. There, a beneficiary possessed the right to elect to take any part or all of the income from a testamentary trust, but she elected to take none. We said in that case, and we say here, that the "income was available to her each year upon request until she renounced her right thereto. She had the 'realizable' economic gain necessary to make the income taxable to her." Cf. *Funk* v. *Commissioner*, 185 F. 2d 127.

Furthermore, we see no prohibition for the application of the realization of income theory for the present case in the same manner that it was used in the assignment of income, see *Helvering* v. *Eubank*, 311 U. S. 122, and the gift of income cases, see *Helvering* v. *Horst*, 311 U. S. 112.

Part of petitioner's argument on this first issue was based on the theory that the June 25, 1945, renunciation was retroactive to the death of her husband. In *Ianthe B. Hardenbergh*, 17 T. C. 166, affd. 198 F. 2d 63, the taxpayers inherited property by operation of law and we held, under Minnesota State law, they had no power to prevent by renunciation the vesting of title immediately upon the death of the decedent. Similarly, in the present case, petitioner's title vested by operation of law at the death of her husband. It appears that the Louisiana State courts have not recognized the theory of renunciation as proposed by petitioner, see *Coreil* v. *Vidrine*, 188 La. 343, 177 So. 233, and likewise, we cannot hold that the renunciation was retroactive for Federal Tax purposes.

In conclusion, on this first issue, we find and hold that all net income of the businesses was taxable to petitioner for the months of February, March, April, and May, and up to June 25, 1945, the date petitioner renounced the usufruct.

In this second issue respondent contends that a reasonable monthly salary of $2,000 should be allocated to petitioner from June 25, 1945, to December 31, 1945, before the distribution of income from the jointly owned Field's Woman Shop. At the hearing respondent amended his answer. This amendment was objected to by petitioner and a third issue was raised. In the amendment respondent determined that the allocation of salary should begin with the demise of the husband so that the period extended from January 31, 1945, to

December 31, 1945. The third issue would be pertinent if we held that the usufruct was not taxable to petitioner; our decision above precludes the need for discussing this third issue, but the second issue remains to be considered.

Neither of the parties contend that the shop was operated under a partnership agreement, but there is no doubt that the petitioner and her sons, the joint owners of it, were taxable as partners, see section 3797 (a) (2), Internal Revenue Code, and it was proper for them to file a partnership return in 1945 for the shop.

The net profit from the shop in 1945, without reduction for a salary to petitioner, was $53,776.31; one-half was distributed to petitioner and one-fourth to each of her sons. The distribution of profit was in proportion to the owners' proprietary interest in the business. Respondent argues that this distribution of profit did not take into account the value of petitioner's services. Petitioner, on brief, concedes that her services were of some value. However, there is no concession that she should be paid for her services, cf. *David L. Jennings*, 10 T. C. 505, 514, and there is no evidence which would show the value of her services.

We hesitate to accept the contention in this case that respondent may reallocate the shop's income by superimposing on the petitioner and her sons a contract to pay petitioner a salary. We find no evidence of sham or lack of bona fides in the distribution of the shop's income. Nor do we know of any statutory provisions which require a joint owner to pay herself a salary. It is well established that sole proprietors and partners are not paid "salaries," which are deductible as business expenses in computing taxable income. By some prior arrangement or agreement a sole proprietor or partner may receive periodic compensation charged against net income. Sec. 29.183–1 of Regs. 111.

Petitioner testified that there was no agreement between herself and her sons as to the distribution of the profits, but as a practical matter some plan must have been in effect because the business net income was distributed on a very definite basis—50 per cent to petitioner and 25 per cent to each son. We do not deem it necessary to make an additional contract for the parties. Petitioner received twice as much income as each son; granted her interest was twice theirs, but so was her risk. Taking into account all the facts and circumstances, we believe the distribution of the shop's income was bona fide and reasonable. Cf. *Weiss* v. *Johnson*, 206 F. 2d 350.

Since this issue does not involve the allocation of partnership income, cases such as *Weiss* v. *Johnson, supra, Edward A. Myers*, 11 T. C. 164, and *David L. Jennings, supra*, are not in point.

We believe that respondent's contention runs deeper than mere alleged payment for petitioner's services to the shop. By his determination respondent has effectively reduced the children's share from the shop from approximately $13,444 each to approximately $7,444. At the same time he has increased petitioner's share from approximately $26,888 to approximately $38,888. In this situation respondent's adjustment appears to be nothing more than a method for increasing petitioner's income on the books and her tax liability in fact. On the record before us we will not alter the distribution of the net income of the Field's Woman Shop. On this issue petitioner is sustained.

One last item remains to be cleared up. In the deficiency notice respondent explained an adjustment as follows:

It is further held that your taxable income from Field's Shoe Department, Monroe, Louisiana, amounted to $7,413.43 rather than $3,605.73 as reported on your return.

In paragraph 4 (b) of the petition, petitioner alleged that respondent erred in his income adjustment for the shoe department. Respondent denied the allegations in paragraph 4 (b). Thus an issue was raised which must be resolved before a Rule 50 computation can be made. Neither party considered this item on brief, but evidence relating to it was presented at the hearing and we do not consider the issue to be waived. See *Anna Bissell*, 23 B. T. A. 572.

There is no doubt that the children acquired at the death of their father half of his interest in the shoe department. We cannot say, for lack of evidence, that the children were partners in the shoe department, but it must be said that they were joint owners in 1945; and at the end of that year the income from the shoe department was distributed to all the joint owners, including petitioner's children. The distributive shares of the children and petitioner were based on their proprietary interests in the shoe department. Since within the provisions of section 22 (a) and as we have discussed above, gross income includes gains growing out of ownership in property, it is proper for petitioner to be taxed on her proprietary interest in the shoe department. However, it is improper for her to be taxed on the proprietary interests of her children. Admittedly, under our holding in the first issue, petitioner is taxed on property owned by her children, but on the present issue we have no usufruct or other statutory provision which would require that she be taxed on her children's income. Again we know of no sham, lack of good faith, or unreasonableness in the distribution of the shoe department income. Therefore petitioner should be taxed only on income resulting from her proprietary interest in the shoe department.

*Decision will be entered under Rule 50.*