LIZZIE M. MANUEL, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Manuel v. Commissioner
Docket Nos. 12840-80, 15335-80, 15336-80, 2320-81.
United States Tax Court
T.C. Memo 1983-138; 1983 Tax Ct. Memo LEXIS 647; 45 T.C.M. (CCH) 981; T.C.M. (RIA) 83138; March 16, 1983. *647 Petitioner's husband died intestate in 1966. Upon his death, the community property of the couple passed to petitioner. She received an undivided one-half interest in the property, and ownership and possession of the usufruct (similar to a life estate) of the other undivided one-half interest.Subject to the usufruct, each of the four children received an undivided one-fourth interest in their father's share of the community property. The community property consisted for the most part of an 800-acre farm. Held, for the years in question, a family partnership did not exist for Federal income tax purposes. Petitioner's children were not the true owners of the capital interests that they were supposed to have contributed to the alleged partnership. Accordingly, petitioner is taxable on the farm income. Charles B. Sklar and William A. Neilson, for the petitioners. Alan H. Kaufman, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: Docket
Taxable year ended
No. [2] *648 Petitioner
Dec. 31,
Deficiency
12840-80
Lizzie M. Manuel
1973
$23,958.00
1974
5,052.00
1975
55,792.00
2320-80
Lizzie M. Manuel
1976
7,555.27
1977
17,511.02
1979
528.95
15335-80
Alvin J. Manuel, Jr.
1975
4,349.00
and Sherry S. Manuel
15336-80
Timothy D. Manuel
1975
5,422.12 After concessions, the issues for decision are (1) whether a valid partnership existed between Lizzie Manuel (hereinafter petitioner) and her four children for Federal tax purposes during the years 1973 through 1977, and (2) whether such partnership existed in 1978 and 1979. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, second stipulation of facts, and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Ville Platte, Louisiana at the time of filing her petitions in docket Nos. 12840-80 and 2320-81. She timely filed her Federal income tax returns for each of the taxable years 1973 through 1979 with the Internal Revenue Service Center, Austin, Texas. Alvin J. Manuel, Jr. and his wife, Sherry S. Manuel, resided in Baton Rouge, Louisiana at the time of filing their petition in docket No. 15335-80. They timely filed a *649 joint Federal income tax return with the Internal Revenue Service Center, Austin, Texas for the taxable year 1975. Timothy D. Manuel was a resident of Ville Platte, Louisiana at the time of filing his petition in docket No. 15336-80. He timely filed his Federal income tax return for 1975 with the Internal Revenue Service Center, Austin, Texas. Petitioner was the wife of Alvin J. Manuel, Sr., who died intestate in 1966. Petitioner and her late husband had four children: Florella Manuel Bentley, Lennard Manuel, Alvin J. Manuel, Jr., and Timothy Manuel. Each of the four children lived on the farm during the entire time they were growing up. Petitioner and her late husband owned as community property approximately 800 acres of real estate in Ville Platte, Louisiana. The property was known as the Alvin J. Manuel, Sr. farm. They also owned as community property a checking account, household furniture, a herd of cattle, stock, and miscellaneous farm equipment. Upon the death of Alvin J. Manuel, Sr., the community property passed pursuant to the Judgment of Possession for the Succession of Alvin J. Manuel, Sr. as follows: petitioner, as surviving spouse in community, received ownership *650 and possession of an undivided one-half interest in the community property. Additionally, petitioner received ownership and possession of the usufruct provided by law of the other undivided one-half interest. [3] Subject to petitioner's usufruct, each of the four children received an undivided one-fourth interest in their father's share of the community property. The Judgment of Possession was recorded and indexed in the real estate conveyance records of Evangeline Parish, Louisiana on March 25, 1966. Petitioner did not participate in the operation of the farm until her husband became ill in 1964. Over the next 2 years, Mr. Manuel taught her to run the business. In 1966, Mr. Manuel died and petitioner assumed the duties and responsibilities of managing the farm. Thereafter, petitioner reported all the income from the farm until 1973. Such income was derived primarily from the sale of rice and soybeans. In the years subsequent to 1974, income principally was derived from rents paid with crop shares. In addition, *651 water from irrigation wells was furnished to neighboring farmers for a share of their crops. Finally, some income was derived from the sale of calves. Petitioner's daughter, Florella Bentley, was approximately 33 years old in 1973. She was the divorced mother of five children. During the years at issue, she lived in Bedford, Texas. In 1973 she began attending school and depended upon petitioner for much of her support. At no time during the years in question did Florella Bentley work on the Alvin J. Manuel, Sr. farm. Petitioner's eldest son, Lennard Manuel, was approximately 32 years old in 1973. From 1969 to 1979, he had drug and alcohol problems. Over that period, Lennard Manuel accumulated substantial indebtedness, partially attributable to his gambling activities and his propensity for writing bad checks. Many of his debts were paid by petitioner, and, by the end of 1978, he owed his mother in excess of $80,000 plus interest. During the years at issue, Lennard Manuel drifted from town to town in southern Louisiana. He did not work on the Alvin J. Manuel, Sr. farm. Alvin J. Manuel, Jr. was approximately 20 years old in 1973. He lived on the farm until his marriage in *652 September of 1973. Thereafter, he lived in Ville Platte, Louisiana until January of 1976, at which time he and his wife moved to Baton Rouge, Louisiana. [4] Alvin J. Manuel, Jr. worked on the farm from the middle of July, 1973 through the 1973 rice harvest and also helped plant and harvest the crop in 1974. He was compensated for his services by petitioner, who provided wage and tax statements, as employer, to him for the work performed during each of the 2 years. Timothy Manuel was approximately 19 years old in 1973. In prior years, he had worked on the farm during the summer, when he helped harvest the crops. He was a student at Louisiana State University during the years 1973 through 1976 and was supported by his mother. Timothy Manuel lived at home during 1973 and 1974. In January of 1975 he moved to Lafayette, Louisiana and resided there until June of 1977, when he moved to Opelousas, Louisiana. [5] At no time did he work on the farm during the years at issue. In 1973, petitioner approached her attorney, *653 Nilas Young, and advised him that she wanted to donate half of her crop to her children. [6] Mr. Young interpreted her statements to mean that she wished to give up her usufructuary right. [7] He advised her against surrendering the usufruct over the children's one-half interest in the farm because the children's creditors, particularly Lennard Manuel's, would seize the farm property and force its sale. Instead, he recommended that she make yearly donations of the standing crop of the farm without recording the acts of donation. On July 2, 1973 petitioner executed a document entitled Act of Donation purporting to donate to her children "One-half (1/2) of the 1973 crops planted and presently unharvested *654 on the Alvin J. Manuel farm." She executed a similar document with respect to the 1974 crops on March 5, 1974 and with respect to the 1975 crops on June 30, 1975. [8] These acts of donation were not publicly recorded. Mr. Young told petitioner that, pursuant to the acts of donation, the children would "pay their share of the expenses and * * * divide the profits." In rendering this advice, Mr. Young did not discuss the tax consequences of the transfers. Petitioner advised her children of the acts of donation for each of the years 1973 through 1975. The Manuel children understood that their mother was giving them one-half of the crop. Petitioner intended to give her children only one-half of the net income derived from the sale of crops. She did not intend to donate to them any of the profits derived from the sale of calves which belonged to her as usufructary She did give them one-half of the proceeds from the sale of the farm's herd of cattle in 1976. The children did not share in the proceeds received from the furnishing of water to neighboring farmers. *655 The farm was operated in 1973 and 1974 under the management of petitioner. She ran the farm in the same manner during those years as she had prior to those years, even though she had made the aforenoted decision in 1973 to give her children one-half of the crops grown on the farm. On September 26, 1974 petitioner entered into an agricultural lease in which she leased the Alvin J. Manuel, Sr. farm for the years 1975 through 1977 to two farmers for a 45-percent share in the rice crop and a 20-percent share of the soybean crop. Under the lease, petitioner was obligated to furnish 45 percent of the fertilizer and 45 percent of the poisons for the rice crop, and 20 percent of each for the soybean crop, and the water for the rice crop. Petitioner continued the lease arrangement after 1977 under an oral agreement. Petitioner ceased making the acts of donation to her children after 1977. [9]
During 1973 through 1975, the rice grown on the farm was sold to the Mowata Rice Dryer and the Ville Platte Rice Dryer. During such years, petitioner instructed these establishments to divide their payments, paying *656 one-half to petitioner and one-half to her children. These instructions usually were given late in the spring or early in the summer of each of the 3 years. Accordingly, the two businesses issued checks pursuant to petitioner's directions to petitioner and the children. [10] The checks to Lennard Manuel were made out jointly to him and petitioner. The checks made out to the children were deposited by petitioner in four joint savings accounts in the names of petitioner and each of her four children. Petitioner had the funds deposited into joint savings accounts because she did not believe that any of her three sons could handle the money responsibly. Although the funds in the joint accounts were set aside for the designated children and although the signature cards indicate that either of the authorized signatories had the legal right to draw on these *657 accounts, the children did not believe themselves free to withdraw the money without their mother's consent. No funds were ever turned over to Lennard Manuel from the farming operation. Instead, at least part of the money designated for Lennard Manuel was applied toward prior indebtedness to his mother. [11] *658 Money was drawn out of the Alvin J. Manuel, Jr. joint account to enable him to enter the horse business. In December, 1978 petitioner loaned Alvin J. Manuel, Jr. $6,490 to purchase a horse. On January 3, 1978 he borrowed $13,258 from his mother to buy a stallion. For both loans, he executed demand promissory notes bearing 6-percent interest. Alvin J. Manuel, Jr.'s portion of the farm earnings for 1976 and 1977, totaling $8,105.50, was applied in partial payment of the $13,258 note. Timothy Manuel drew some funds out of his joint account for a downpayment on a home. On February 8, 1980 he borrowed $5,000 from petitioner and executed a non-interest bearing promissory note payable to her on demand for that amount. It does not appear that Florella Bentley ever withdrew funds from the joint savings account in petitioner's and her name. However, in 1978, $8,105.50 was applied against prior indebtedness to her mother. [12] *659 The expenses of the farm were paid by petitioner from her checking accounts at the Tri-Parish Bank and the St. Landry Bank. Only petitioner had signature authority over these accounts, which were also used for her personal expenses. She kept track of the expenses allegedly owed to her by her children by adding the calculated amount to each child's note at the end of the year.
Over the years, the children occasionally would inquire about the operation of the farm. Petitioner kept them generally informed about the aspects of running the farm. The children had lived on the farm long enough to inquire meaningfully about the entire farming operation. *660 [13] During the years 1973 through 1977, each of the three Manuel brothers, when they were not otherwise living at home, returned home fairly frequently, about every 2 or 3 weeks. Their mother usually spoke with them about the farm operations during these visits. Petitioner and her children did not have a written partnership agreement with respect to the Alvin J. Manuel, Sr. farm. In fact, the word "partnership" never came up in petitioner's discussions with her children with respect to the farm. They usually discussed it in terms of "a share." The accounting records for the Alvin J. Manuel, Sr. farm for the years 1973 through 1977 were essentially a continuation of the records kept prior to 1973. No partnership books and records were maintained. No partnership bank account for the farm was ever opened. Petitioner and her children did not make it publicly known that they were operating the Alvin J. Manuel, Sr. farm as a partnership.
The examination of petitioner's returns for the years 1973 *661 through 1975 began in August, 1976. Neither petitioner nor the return preparer advised the revenue agent examining the returns that a "partnership" existed between petitioner and her children. On September 24, 1976 the revenue agent proposed adjustments to petitioner's 1973 through 1975 income. Petitioner subsequently employed a certified public accountant, Eddie LeBlanc. It was at this time that the revenue agent was first advised of the existence of a "partnership." On March 10, 1977 petitioner filed delinquent partnership returns for the years 1973 through 1975 in the name of "Lizzie Manuel, et al., The Manuel Family Farm." These returns were filed by Eddie LeBlanc. For the years 1976 and 1977, petitioner timely filed partnership returns for the farm. In his statutory notices, issued to petitioner, respondent determined that no valid partnership existed and that all farm income was properly taxable to petitioner. OPINION The sole issue framed for decision by the parties is whether a valid partnership existed, for Federal income tax purposes, between petitioner and her four children during the years 1973 through 1979. The issue of whether an alleged partnership will be recognized *662 for purposes of Federal income taxation is one of fact. Commissioner, v. Culbertson,337 U.S. 733, 742 (1949). In general, the question is-- whether, considering all the facts--the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent--the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. [Commissioner v. Culbertson,supra at 742; fn. refs. omitted.] It is important that the partners participate in the business during the years in issue by contributing "one or both of the ingredients of income--capital or services." Commissioner v. Culbertson,supra at 740. See section 1.704-1(e)(1)(i), Income Tax Regs., which provides that "[t]he production of income by a partnership is attributable to the capital or services, or both, contributed by the partners" and that the partnership provisions should be read in light of section 61, which *663 requires "that income be taxed to the person who earns it through his own labor and skill and the utilization of his own capital." Not one of the Manuel children contributed to the Manuel farm valuable services indicative of their alleged participation as partners in the so-called partnership. Florella Bentley lived in Texas during the years in question, and although Lennard and Timothy Manuel lived relatively near the farm during such years, neither performed any work on the farm. Finally, while it is true that Alvin J. Manuel, Jr. worked on the farm for parts of 1973 and 1974, he did not do so as a partner in the farm business, but as an employee. He was compensated by petitioner for his services and provided wage and tax statements by her for the work done. With respect to these services, it is clear that Alvin J. Manuel, Jr. was treated as an employee rather than a partner. Since Alvin J. Manuel, Jr.'s services were rendered by him as an employee, it follows that neither he nor the rest of the Manuel children contributed services as partners to the farming enterprise. See United States v. Ramos,393 F.2d 618, 623 (9th Cir. 1968). [14] *664 It is not essential that the children have contributed services to be recognized as partners of the alleged partnership. In the case of family partnerships, section 704(e)(1) provides that-- A person shall be recognized as a partner * * * if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person. See section 1.704-1(e)(1) (ii), Income Tax Regs. Respondent concedes that capital is a material income-producing factor in the alleged farming partnership. Petitioner contends that the Manuel children acquired, by way of gift from their mother, a capital asset consisting of the use of one-half of the farm property. They, in turn, *665 allegedly contributed this capital asset to the farming partnership. The subject of the gift and contribution to capital was purported to be a portion of petitioner's usufruct of the undivided one-half interest in the farm. It is clear that the gift was not of the entire usufruct, since each of petitioner's acts of donation only covered crops planted and eventually harvested during the year of the gift. A usufruct is analogous to the life estate at common law. See Land v. United States,565 F.2d 355 (5th Cir. 1978); Marcus v. Commissioner,22 T.C. 824, 829 (1954). Article 533 of the La. Civ. Code defined usufruct as "the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce, provided it be without altering the substance of the thing." [15] *666 The usufructuary is normally taxable on the income produced by the property over which the usufruct extends. See Marcus v. Commissioner,supra at 830. In order for the children to be partners in the socalled Manuel partnership, it must be determined, based on all the facts and circumstances, that they were the true owners of the capital interests that they were supposed to have contributed. See Krause v. Commissioner,57 T.C. 890, 897 (1972), affd. 497 F.2d 1109 (6th Cir. 1974); Morton v. Commissioner,46 T.C. 723, 736 (1966). More specifically, section 1.704-1(e)(1)(iii), Income Tax Regs., provides that a donee of a capital interest in a family partnership must acquire such interest in a bona fide transaction and must be the "real owner of such interest." The transfer must vest "dominion and control of the partnership interest in the transferee." Accordingly, a transfer will not be recognized "if the transferor retains such incidents of ownership that the transferee has not acquired full and complete ownership of the partnership interest." In this respect, transactions between family members will be examined with greater scrutiny than transactions between unrelated parties. See section 1.704-1(e)(1)(iii), Income Tax Regs.
Section 1.704-1(e)(2), Income Tax Regs., sets forth *667 some of the more important factors to be considered in determining whether the donee has acquired ownership of the capital interest in a partnership. The donor may retain such controls of the interest that such donor should be treated as the substantial owner of the interest. Section 1.704-1(e)(2)(ii), Income Tax Regs. Here, petitioner retained substantial control over the purported capital interests of her children. Petitioner's acts of donation did not in fact have the effect of transferring the totality of her usufruct. She transferred the income from the sale of some, but not necessarily all, of the crops which were grown on the Manuel farm. Thus, because petitioner did not execute the acts of donation until March, at the earliest, of the year in which the crops were sold, and because she retained the tacit power to determine which crops were governed by the acts of donation, she retained ongoing control over the amount of income her children would receive during each year. See sec. 1.704-1(e)(2)(ii)(a), Income Tax Regs. Furthermore, petitioner placed substantial restrictions on the income that supposedly was transferred to her children. With respect to Lennard Manuel, she *668 required that all income attributable to him be applied against his indebtedness to her. Income received by the other three children generally was treated in similar fashion. All proceeds were deposited in the four joint accounts in the names of petitioner and each of her children. While it is true that each child had the legal power to withdraw funds deposited in such accounts without the consent of their mother, we doubt that the children were aware of this power, or, at the very least, we doubt that they believed it advisable to exercise such power if they did know about it. During the years in question, only two withdrawals were made by the children. In 1978, Alvin J. Manuel, Jr. withdrew money from his account, but it appears that the withdrawal was treated as a loan from petitioner to her son. Alvin J. Manuel, Jr. testified that the money was withdrawn only after he first conferred with petitioner. The circumstances were virtually the same with respect to the $5,000 withdrawn by Timothy Manuel. Possibly the most significant incident of control petitioner had over the funds deposited into the joint savings accounts consisted of her continuing power to cut off the annual *669 flow of funds to those accounts. This ever-present threat was more than sufficient to prevent her children from withdrawing and using funds against her wishes. Finally, the fact that petitioner placed significant restrictions on the use of the money is confirmed by her own stated intention of handling the money for them so they would not spend it irresponsibly. While these restrictions may have been perfectly understandable from a parental point of view, nonetheless they undermine the assertion that the children were the real owners of the capital interests in question. See section 1.704-1(e)(2)(ii)(a), Income Tax Regs. [16]
In further support of her position, petitioner *670 asserts that, pursuant to state law, she surrendered her usufruct to her children for each of the years at issue and therefore it follows automatically that they acquired an unfettered capital interest in the family partnership. However, "[t]he execution of legally sufficient and irrevocable deeds or other instruments of gift under State law is a factor to be taken into account but is not determinative of ownership by the donee for the purposes of section 704(e)." Sec. 1.704-1(e)(2)(i), Income Tax Regs. See also Woodbury v. Commissioner,49 T.C. 180, 194-195 (1967). We have serious doubts with respect to petitioner's contention that she renounced her usufruct or transferred it to her children. Even assuming renunciation of the usufruct can be accomplished in the absence of express writing to that effect, we do not believe that petitioner's actions were sufficient to effect a renunciation or transfer. Petitioner did not surrender her "life estate." On the contrary, each year she made a limited transfer of a designated portion of the proceeds from the sale of the crops on her farm. The property transferred did not correspond to the fruits of the usufruct for that year, since only the *671 proceeds from selected crops were "donated." The acts of donation only covered the single year in which they were executed and, if anything, demonstrate that petitioner retained the usufruct for future years. Moreover, her yearly transfers only carved out a portion of her enjoyment for the year in which they were made. As previously stated, petitioner retained significant control over the amoung and use of the "donated" crop proceeds. Finally, we have found as a fact that petitioner's attorney advised her against surrendering her usufruct. Petitioner followed this advice. However, even were we to find that petitioner somehow satisfied the state law requirements for renunciation or transfer of the usufruct, we would nevertheless hold that petitioner did not transfer real ownership of the so-called capital interest to her children for the years in question for purposes of section 1.704-1(e)(2), Income Tax Regs.
In conclusion we note that the assertion that the Manuel farm was a family partnership during the years in question is severely undermined by the fact that the farm was not conducted like a partnership. Sec. 1.704-1(e)(2)(vi), Income Tax Regs. There was no written partnership *672 agreement with respect to the farm [17] and the children were not publicly held out as partners. See sections 1.704-1(e)(2)(vi) and 1.704-1(e)(2)(vi)(e), Income Tax Regs. During the years in question, the parties did not refer to themselves as "partners" in a partnership. No partnership books and records were kept and no partnership bank account ever was opened. See section 1.704-1(e)(2)(vi)(b), Income Tax Regs. It was not until 1977 that petitioner filed (delinquent) partnership returns for the years 1973 through 1975. See section 1.704-1(e)(2)(vi)(f), Income Tax Regs. The fact that the children had no voice in the affairs of the farm further reinforces the conclusion that they were not treated as partners in the operation of the business. Further, we find it significant that, in conducting the business of farming, none of the four children ever made any out-of-pocket payments toward operational expenses incurred *673 on the farm. All such payments were made by petitioner. While it might be true that petitioner added the apportioned amount of such expenses to each child's note at the end of the year, it does not follow that the parties intended to share losses as well as profits. At most, this shows that the parties attempted to share net income rather than gross income. Petitioner argues on the one hand that her "donations" were intended to alleviate the financial difficulties of her children and on the other hand that, if the farm had sustained net losses for all the years in question, she would have expected her children to bear their share. Petitioner's donative purpose, which we believe existed, does not comport with her claim that the children would have been accountable for any and all losses. The case of Scofield, v. Davant,218 F.2d 486 (5th Cir. 1955), cited by petitioner, is distinguishable from the case at hand. In Scofield, the court found that the children and relatives actually purchased interests in the partnership. There was an actual partnership agreement which was entered into in good faith by the parties. Here, we have found as a fact that petitioner's children did not *674 contribute capital to the partnership since they were never the real owners of any capital interest. Furthermore, unlike the case in Scofield, the Manuel children did not enjoy the right normally accorded bona fide partners of a partnership. For these reasons, we believe that Scofield v. Davant,supra, is of no assistance to petitioner. Petitioner raised for the first time on brief the issue of whether a family partnership existed during 1978 and 1979. During trial, petitioner's counsel stated that petitioner terminated the "crop sharing arrangement" after 1977. We refuse to consider this issue with respect to the tax years 1978 and 1979 on the ground that it was not timely raised. Messer v. Commissioner,52 T.C. 440, 455 (1969), affd. 438 F.2d 774 (3d Cir. 1971). [18]
While we commend petitioner's generosity in attempting to assist her financially strapped children, we do not believe that, based on all the facts and circumstaces, "the parties in good faith and acting with a business *675 purpose intended to join together in the present conduct" of the Manuel farm. Commissioner v. Culbertson,337 U.S. 733, 742 (1949). Accordingly we hold that a family partnership did not exist for Federal tax purposes between petitioner and her children during the years in issue. Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Alvin J. Manuel, Jr. and Sherry S. Manuel, docket No. 15335-80; Timothy D. Manuel, docket No. 15336-80; and Lizzie M. Manuel, docket No. 2320-81.↩
2. The statutory notice in docket No. 12840-80 was dated April 10, 1980. The statutory notice in docket No. 2320-81 was dated November 6, 1980. The statutory notice in docket No. 15335-80 was dated May 13, 1980. The statutory notice in docket No. 15336-80 was dated May 13, 1980.
3. For purposes of explanation only, a usufruct is the civil law's approximate equivalent to a life estate at common law. See Marcus v. Commissioner,22 T.C. 824, 829↩ (1954).
4. Baton Rouge is approximately 80 to 85 miles from Ville Platte.↩
5. Lafayette is approximately 25 miles from Ville Platte. Opelousas is approximately 19 miles from Ville Platte.↩
6. Her "donation" was motivated in large part by her concern for Lennard Manuel, who was burdened by substantial indebtedness, and Florella Bentley, who had no means of support. She intended that the monies paid to Lennard be used by him to pay his debts and that the monies paid to Florella be used to pay for her schooling and for her children's support. ↩
7. When consulting Mr. Young, petitioner did not use the term "usufruct." Rather, she indicated a desire to give the children "their share."↩
8. On March 5, 1974 no crops had been planted. On June 30, 1975 the entire Alvin J. Manuel, Sr. farm was under lease to two farmers.↩
9. She paid the full amount of the income taxes on all of the farm income for 1978 and 1979.↩
10. Not all crop income was divided among the children. For instance, in 1973 Ville Platte Rice Dryer paid $570.48 to petitioner and nothing to the children. In 1974, Farmers Rice paid $346.99 and Mowata Rice Dryer paid $4,872.93 to petitioner without paying a portion to the children (the $4,872.93 payment was for the "1973 Bean Crop").↩
11. Petitioner made periodic loans to Lennard Manuel as follows: Date
Amount of Debt
11/13/67
$7,000.00
11/13/67
9,601.15
5/28/69
7,525.00
12/3/69
1,935.00
6/23/70
7,920.00
12/14/70
9,184.28
5/10/72
4,800.00
5/4/77
17,837.45
These loans all were evidenced by promissory notes secured by mortgages. Petitioner waived the payment of interest on the notes by specific endorsement. On January 3, 1978 Lennard Manuel's indebtedness to his mother (including two judgments of third parties) was consolidated into one promissory note in the face amount of $72,800. The farm earnings payable to Mr. Manuel for 1976 and 1977, totaling $8,105.50, were entered on the back of the note as partial payment of his indebtedness. The remaining debt is secured by a mortgage on his interest in the Manuel farm. On December 11, 1978 Lennard Manuel executed another promissory note payable on demand to his mother in the face amount of $15,877 and bearing interest of 6 percent. On February 8, 1980 he executed a demand note payable to petitioner and bearing no interest in the face amount of $21,641.09.
12. Petitioner made substantial loans or advances of funds to Florella Bentley periodically from 1966 through 1980, for which Ms. Bentley is still indebted. These advances were as follows: Evidence of
Date
Amount
Indebtedness
1966
$2,300.00
Demand Note
1971
3,600.00
Letter of Acknowledgment
1972
5,747.30
Letter of Acknowledgment
1973
4,700.00
Letter of Acknowledgment
1975
5,000.00
Letter of Acknowledgment
1976
5,736.48
Letter of Acknowledgment
1977
7,546.78
Letter of Acknowledgment
1978
8,315.00
Letter of Acknowledgment
1980
7,711.51
Demand Note
The Letter of Acknowledgment was dated October 25, 1972 and the amounts on the face of the letter were filled in yearly.↩
13. Because he worked on the farm during parts of 1973 and 1974, Alvin J. Manuel, Jr. apparently was more familiar with the planting and harvesting of the crops than were his brothers and sister.↩
14. The occasional conversations that petitioner had with her children in connection with the farm operations do not constitute contributions of services by the children to the farm business. Such conversations generally involved petitioner explaining certain aspects of the farm to one or more of her children. They occurred intermittently, and it does not appear that petitioner solicited, received, or acted upon any advice from her children with respect to the operation of her farm.
15. In 1976, the La. Civ. Code was redrafted, and Art. 533 was incorporated into the newly written Art. 539. However, the new provision did not change the law. See La. Civ. Code Ann. art. 533 (West 1972) and compare La. Civ. Code Ann. art 539↩ (West 1980).
16. For essentially the same reasons, petitioner also limited the right of the donees to liquidate or sell their interests at their discretion. See sec. 1.704-1(e)(2)(ii) (b), Income Tax Regs. The fact that petitioner retained control of the assets essential to the business, sec. 1.704-1 (e)(2)(ii)(c), Income Tax Regs., and retained management powers inconsistent with normal relationships among partners, see sec. 1.704-1(e)(2)(ii)(d↩), Income Tax Regs., cannot be seriously disputed and does not require lengthy discussion.
17. While it is true that under Louisiana law, a valid partnership can be created informally, see Bayou Verret Land Co. v. Commissioner,450 F.2d 850, 861↩ (5th Cir. 1971), we do not believe that there is sufficient evidence to support such a finding in the instant case.
18. Further, the 1978 taxable year is not before the Court. See sec. 6214(b). With respect to 1979, even if the issue were timely raised, we would conclude that no partnership existed during that year.↩